No. 11,812.

HOLDERMAN v. MILLER.

VENDOR AND PURCHASER.—*Growing Wheat.*—*Reservation.*—*Personal Property.*—Wheat which in fact is attached to and is a part of the soil, although in a theoretical sense separated therefrom by a reservation in the deed of a grantor, is not in a condition to be transferred under a general designation of property on and distinct from the farm.

Holderman *v.* Miller.

SAME.—*Reformation of Deed.*—Where a grantee, believing he is the owner of growing wheat by purchase of the land, buys from his grantor his household goods "and all other property on said farm," he can not, upon discovering that the wheat was reserved but under circumstances not entitling him to a reformation, claim the wheat as a part of the personal property so purchased.

PLEADING.—*Theory of Case.—Practice.*—A plaintiff must recover upon the theory of the case on which his complaint proceeds or not at all.

From the Elkhart Circuit Court.

*J. H. Baker* and *J. A. S. Mitchell,* for appellant.

*R. M. Johnson, H. C. Dodge* and *E. G. Herr,* for appellee.

NIBLACK, J.—Complaint by Martha Miller against Abraham Holderman, charging that one Joseph Miller, Sr., was, on the 1st day of September, 1878, the owner of a farm in Elkhart county, consisting of one hundred and twenty acres of land; that on that day the defendant Holderman rented certain fields, constituting a part of such farm, from the said Joseph Miller for the purpose of sowing the same in wheat, upon the terms that the said Holderman was to have three-fifths of the crop when it was harvested and the said Joseph Miller the remaining two-fifths, to be left on the farm for him in the bushel; that, on the 20th day of November, 1878, the said Holderman having in the meantime sowed said field in wheat, the plaintiff purchased the farm for full value from the aforesaid Joseph Miller, embracing also all the household goods and other personal property situate thereon, and including his interest in the growing wheat sowed as above; that, on the 4th day of December, 1878, the said Joseph Miller executed to the plaintiff a deed of conveyance for such farm, in the body of which the words "wheat on said land reserved" appear to have been inserted; that said words of reservation were inserted in such deed of conveyance without the knowledge or consent of the plaintiff, and was done either fraudulently for the purpose of cheating her, or by the mutual mistake of the parties; that two-fifths of the wheat sown by Holderman, under his contract with the said Joseph

Miller, amounted to two hundred and fifty bushels, all of which Holderman, on the 1st day of August, 1879, converted to his own use, to the plaintiff's damage in the sum of $400; that the said Joseph Miller has since died, and no administrator has been appointed upon his estate. Wherefore the plaintiff prayed that the deed executed to her as above might be reformed by causing the words of reservation as to the wheat to be struck out, and that she might have judgment against Holderman for $400.

There was an answer in denial, and a trial by the court resulted in a special finding of the facts as follows:

"1st. Prior to December 4th, 1878, Joseph Miller, Sr., was the owner of the following described real estate in Elkhart county, State of Indiana, to wit: · The east half of the southeast quarter and the east half of west half of the southeast quarter of section 25, township 37 north, range 4 east.

"2d. That in the summer of 1878, said Joseph Miller, Sr., rented to the defendant three fields, containing about thirty-two acres of said lands to be sowed in wheat by the defendant, who was to cultivate, harvest and thresh the wheat raised on said land, and retain three-fifths of the wheat so raised and was to deliver to said Joseph Miller two-fifths of the wheat so raised, in the bushel, and that in the fall of 1878, said defendant did sow said fields, so rented, in wheat.

"3d. That on the 1st day of December, 1878, said Joseph Miller, Sr., who was the father of the plaintiff, proposed by parol to sell to plaintiff, and plaintiff to purchase of him, said lands, and what property was then thereon, for the sum of seven thousand dollars, one hundred dollars to be paid down, and plaintiff to execute her notes for $900, and assume the mortgages and maintenance of her mother, the wife of said Joseph Miller, Sr., as stated in the deed hereinafter set out. The wheat then growing on said land was not mentioned other than as above stated.

"4th. That, on the 2d day of December, 1878, Joseph Miller, Sr., and plaintiff went to the office of George W.

Best, a notary public at Elkhart, to complete said sale and purchase; that among the other terms and conditions of paid sale and purchase, said Joseph Miller, Sr., stated to said notary public that the wheat growing on said lands was to be reserved; that said notary then wrote the deed in the words and figures as follows, to wit: 'This indenture witnesseth that Joseph Miller, Sr., and Catharine Miller, his wife, of Elkhart county, in the State of Indiana, convey and warrant to Martha Miller, of Elkhart county, in the State of Indiana, for the sum of seven thousand dollars, the receipt whereof is hereby acknowledged, the following real estate in Elkhart county, in the State of Indiana, to wit: East one-half of the southeast one-fourth of section twenty-five, township thirty-seven north, of range four east; also, the east one-half of the west one-half of the southeast one-fourth of said section above named, subject to mortgage liens of State of Indiana, Johnson W. Allen, Daniel Miller and George W. Best; also, subject to support and care of Catharine Miller during her life, and payment of her funeral expenses, and the said Martha Miller hereby expressly agrees, in part consideration of this conveyance, with the said Joseph and Catharine Miller to furnish the said necessary support and care for said Catharine Miller and said funeral expenses and to keep said Joseph Miller, Sr., free from the payment of any amount for the support and care of said Catharine Miller, and the said lands shall be held subject to the payment of all amounts necessary to furnish said support and care as aforesaid. Wheat on said land reserved. In witness whereof, the said Joseph Miller, Sr., and Catharine Miller, his wife, have hereunto set their hands and seals this 2d of December, 1878.

" ' Signed and acknowledged.

" ' JOSEPH MILLER. [SEAL.]

             her

" ' CATHARINE + MILLER. [SEAL.]

            mark

" ' GEORGE W. BEST.

" ' E. DUNTON.

" ' State of Indiana, Elkhart County, ss :

" ' Before me, George W. Best, a notary public in and for said county, this 4th day of December, 1878, personally came Joseph Miller, Sr., and Catharine Miller, his wife, and acknowledged the execution of the annexed deed.

" ' Witness my hand and notarial seal.

" ' GEORGE W. BEST, Notary Public.'

" That said Best read said deed to said parties, as written, and said Joseph Miller then signed his name to said deed; that said deed was then left in the possession of said Best, who, by arrangement of the parties, took it to the house of said Joseph and Martha, on the 4th day of December, 1878, to be signed by said Catharine and acknowledged by the grantors; that said Best then read said deed again, in the presence and hearing of plaintiff, to said Catharine Miller who then signed it, and together with her husband acknowledged it, when the said deed was placed in an envelope by said Best and laid on the mantel in the room where all the parties were, and with their consent and concurrence. At that time, upon the inquiry by plaintiff, as to whether the deed transferred to her the property on the farm, by direction of said Joseph Miller and plaintiff, said Best drew up and said Joseph Miller, Sr., signed the following written instrument, to wit:

" ' Received of Martha Miller $25 in full payment for all my household goods now in house on farm, and all other property on said farm deeded by me to said Martha Miller.

" ' December 4th, 1878.        JOSEPH MILLER, SR.'

" That said instrument was read by said Best in the presence and hearing of said parties, and by him placed in said envelope with said deed; that said deed and said written instrument were delivered to plaintiff by placing them on said mantel as aforesaid.

" 5th. That at the time of delivering said deed there was no property on said land belonging to said Joseph Miller, Sr.,

except a few articles of household goods, two old kettles and the wheat in controversy.

" 6th. That two days after the delivery of said deed, it having been suggested by a friend that she had better have it examined, plaintiff took said deed and submitted it to Judge Osborne, who read it over to himself and stated to the plaintiff that it was all right; that plaintiff did not state to Osborne the terms of the contract, nor mention the wheat. She then caused said deed to be placed on record.

" 7th. That plaintiff took possession of said land, upon the delivery of said deed, and that at and prior to the execution of said deed, she was an intelligent woman, possessed of an ordinary common school education, and could write and read writing with ordinary facility; that plaintiff did not read said deed before its execution and delivery to her, nor did she hear the clause in said deed, ' wheat on said land reserved,' read by said Best, nor did she know that said clause was in said deed until in April, 1879; that plaintiff had been acquainted with Best for many years, who was also an attorney, and had drawn one mortgage for her, and advised her on several occasions, and had visited her and her father's family, and was the adviser and attorney of her father, said Joseph Miller, Sr.; that neither the grantors in said deed nor said Best made use of any trick or artifice to prevent plaintiff from reading said deed; that she failed to read it by reason of the confidence she placed in said Best; but she could readily have read it if she had so desired.

" 8th. That in April, 1879, an execution issued on a judgment against Joseph Miller, Sr., was levied on said wheat; that said judgment was a lien on said land at the date of the execution of said deed, but said Joseph Miller, Sr., stated to plaintiff, at the time of the execution of said deed, that said judgment was paid, if not, he would pay it; that after said wheat was advertised for sale, as the property of said Joseph Miller, Sr., defendant, without actual knowledge of said res-

ervation in said deed, purchased said wheat from said Joseph Miller, Sr., and paid him therefor $80, which sum was applied to the payment of said judgment.

"9th. That the wheat so raised on said land amounted to 505 bushels; and the two-fifths amounted to 202 bushels, all of which was taken possession of by defendant in August, 1879, and converted by him to his own use, and on demand made by plaintiff to have two-fifths thereof set apart for her, defendant refused so to do, but retained said wheat, and in the fall of 1880 sold said wheat and retained the proceeds thereof; that said wheat was worth one dollar per bushel, and two-fifths thereof was of the value of $202, after the taking and prior to the filing of the amended complaint in this cause, to wit, March 2d, 1880; that interest on said sum from said date to the trial, at six per cent., is $48."

Upon the facts thus found the court came to the following conclusions of law:

*First.* That the plaintiff was the owner of the wheat in controversy.

*Second.* That the plaintiff was entitled to recover from the defendant the sum of $202, the value of such wheat on the 2d day of March, 1880, the time when the amended complaint herein was filed; also, interest at the rate of six per cent. from that date, amounting to $48, and making in all the sum of $250.

And, over the defendant's exceptions to the conclusions of law, judgment was rendered against him for the sum of $250.

Error is assigned upon the conclusions of law stated as above.

The argument here has taken a wide range, and some questions are incidentally, and others elaborately, discussed, which, in our view, are wholly immaterial to a proper decision of the cause. As has been seen, the complaint in this case was framed, and the action prosecuted, upon the theory that certain words, fatal to the plaintiff's right to recover, had been

improperly inserted in her deed to the farm, and that it was necessary to have a reformation of her deed before her right of recovery would be complete. It is not insisted that the facts, as found by the circuit court, established the plaintiff's claim to have her deed reformed; on the contrary, it is impliedly admitted in argument that, in that respect, the case made by the complaint was not proven at the trial, and the plaintiff's title to the wheat in suit is now made to rest upon a supposed purchase of it by her as personal property on the day the deed to the farm was delivered to her.

Waiving all questions of variance between the claim made by the complaint and the facts found at the trial, we are unable to discover any ground upon which it can be safely held that the plaintiff purchased the wheat from her father, as personal property, after his execution of the deed to the farm.

In the first place, although in a certain theoretical sense separated from the land by the reservation in the deed, the wheat was still in fact attached to, and a part of, the soil, and hence not in a condition to be transferred under the general designation of property on, and distinct from the farm.

In the next place, the inference is irresistible that at the time the plaintiff took her father's receipt for $25 for the household goods and other property on the farm, she believed she was the owner of the wheat by her purchase of the farm, and that, therefore, she did not either have it in her mind, or in any manner consider, that she was purchasing the wheat, as separate from the farm, when she took the receipt in question; consequently the plaintiff's present claim that she purchased the wheat in connection with, and as a part of, the transaction through which she obtained the household goods, is contrary to the theory upon which the action was prosecuted, and is also in opposition to every fair inference from the facts as found by the circuit court.

The judgment is reversed, with costs, and the cause remanded, with instructions to the circuit court to state conclu-

sions of law in accordance with this opinion, and to enter judgment thereon in favor of the defendant below.

MITCHELL, C. J., having been of counsel in this cause, took no part in its decision.

Filed June 20, 1885.