MARTIN HENSON, Aministrator, *vs.* LYDIA D. BECKWITH.

PROVIDENCE — JUNE 29, 1897.

PRESENT : Matteson, C. J., Stiness and Tillinghast, JJ.

The owner of a building containing a freight elevator leased it for a term of years, the lessee covenanting to keep the interior in repair and the lessor having no control over the elevator nor the right to make alterations. An opening existed between the elevator and the outer wall of the building. During the term the plaintiff's intestate, while delivering goods to a tenant by the latter's invitation, fell through this opening and was killed. In an action against the owner :—

*Held*, that, as the building was not a nuisance, nor unfit for the purpose for which it was let, and as the plaintiff's intestate was not upon the premises by invitation of the lessor, and the latter was not in possession or control of the elevator well, there was no right of action against the owner for the accident.

*Joyce* v. *Martin*, 15 R. I. 558, relative to a landlord's liability to a stranger for the defective condition of premises under lease, affirmed.

A *freight* elevator is of itself a warning that it is not intended for the safety of passengers, and is a like warning to those at work upon it.

If a tenant invite a stranger to use such an elevator he is the one to give warning and look out for the safety of his guest.

Bearing in mind the distinction made in cases where an invitation by the landlord may be implied, the liability of lessor and lessee is limited to the respective acts of each with reference to a stranger.

TRESPASS ON THE CASE for negligence against the owner of a building for maintaining therein an elevator known to be defectively constructed, and in attempting to use which

the plaintiff's intestate, while delivering goods to a tenant of the building, was killed. Certified from the Common Pleas Division and heard on substantial demurrer to the declaration, and also on demurrer to plea filed.

STINESS, J. The declaration alleges that the defendant, owner of a building known as the Owen Building, on Dyer street, in the city of Providence, on April 3, 1895, and for a long time prior thereto, knew of a dangerous defect in the construction of the elevator well therein, by leaving a large opening between the elevator and the outer wall; that while the plaintiff's intestate was delivering goods, on said April 3rd, to a tenant in the building by his invitation, and while in the exercise of due care, said intestate fell through the opening and was killed.

The defendant demurs to the declaration for lack of material averments; but as these could be supplied by amendment, and as the real question of the case arises in a broader way upon the defendant's plea, to which the plaintiff demurs, we will consider the whole case as it is shown by the pleadings.

The plea sets up the fact that, excepting a small store, the whole building, together with the elevator, was under lease from January 1, 1895, to December 31, 1899, with covenant by the lessee to keep the interior in repair, and that the defendant had no control over the elevator nor the right to make alterations. The case as thus stated raises the question of a landlord's liability to a stranger for the defective condition of premises under lease.

In *Joyce* v. *Martin*, 15 R. I. 558, this court recognized three classes of cases of this sort : *First*, where the owner leases premises which are a nuisance, or must, in the nature of things, become so by their use, then, whether in or out of possession, he is liable for injuries resulting from such nuisance. *Second*, where premises are let for rent or profit to be used for purposes for which they are not fit or safe, and all this was known, or ought to have been known to the lessor, he is also liable for injuries resulting from such use. *Third*,

where property, at the time of a demise, is not a nuisance, and an injury happens by some act of the tenant or while he has entire possession and control of the premises, the owner is not liable.

These three rules seem to us to be both comprehensive and correct. Our inquiry, therefore, is to which class the case at bar belongs.

The first class of cases includes those where an owner has, by an express or implied invitation, brought persons to danger and injury, under conditions which amount to a nuisance. Examples of this kind are found in *Gordon* v. *Cummings*, 152 Mass. 513, where an owner maintained a common hallway for his tenants, to which a letter carrier was thereby invited ; *Learoyd* v. *Godfrey*, 138 Mass. 315, where an owner maintained an uncovered well in a passageway to a house, to which a police officer was held to be invited ; *Larne* v. *Farren*, 116 Mass. 67 ; *Irvine* v. *Wood*, 51 N. Y. 224 ; *Tomle* v. *Hampton*, 129 Ill. 383 ; which were cases of holes in or adjacent to a public walk ; and *House* v. *Metcalf*, 27 Conn. 631, where an overshot water wheel, so near the road as to frighten horses, was held to be a nuisance. *Wendell* v. *Baxter*, 12 Gray, 494 ; *Moody* v. *N. Y.*, 43 Barb. 282 ; *Albert* v. *State*, 66 Md. 325, like *Joyce* v. *Martin*, were cases of piers or wharves to which the public were held to be invited.

Of the second class *Carson* v. *Godley*, 26 Pa. St. 111, is an example, the building having been unfit for the purpose for which it was let.

We think it is clear that the case at bar does not fall within the first of these classes. The defect complained of was not in or near a public way, nor in a part of the premises held out by the owner for the entry of strangers, so as to amount to an invitation to a place which is a nuisance. The term "nuisance," in legal phraseology, "is applied to that class of wrongs that arise from the unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, . . . working an obstruction of or injury to a right of another or of the public." Wood's Law of Nuisances, § 1. One has the right to erect a building, in general terms, as he

pleases, and even if there be dangerous places in it he violates no right of other people in so doing. If he invites others into such a building he is, to some extent, responsible for their safety ; but the building is not on that account a nuisance. So one has the right to hire such a building, and, under the same limitations, he does not thereby maintain a nuisance.

Nor is the case at bar within the second class of cases above described. It does not appear that the building was unfit for the purposes for which it was let. The defect complained of was open and obvious. It could easily have been guarded against by warning or a barrier. Being a freight elevator, it was of itself a warning that it was not intended for the safety of passengers, and equally so was it a warning to those at work upon it. The injury was not caused by any defect in the elevator itself. Such elevators are now in common use, and it is a matter of common knowledge that they are more or less unprotected at the sides. The declaration does not state whether the plaintiff's intestate was an employee of the lessee or a stranger, but it seems to imply the latter in stating that he entered upon the invitation of a tenant in said building. If he was an employee, the rule of *Kelley* v. *Silver Spring,* 12 R. I. 112, that one who works exposed to a manifest danger cannot look to his employer if he is injured, would apply, with stronger reason to exonerate the lessor or the employer. If he was a stranger, on the premises at the invitation of a tenant, the case falls within the third class described above, and the owner is not liable.

In *Harpel* v. *Fall,* 65 N. W. Rep. 913, the rule is stated that where there is no agreement to repair leased premises by the landlord, and he is not guilty of any fraud or concealment as to their safe condition, and the defects in the premises are not secret, but obvious, the tenant takes the risk of their safe occupancy ; and the landlord is not liable to him, or to any person entering under his title or who is upon the premises by his invitation, for injuries sustained by the unsafe condition of the premises.

To the same effect are *Freeman* v. *Hunnewell,* 163 Mass.

210 ; *Leonard* v. *Storer*, 115 Mass. 86 ; *Mellen* v. *Morrill*, 126 Mass. 545 ; *Davidson* v. *Eischer*, 11 Col. 583.

Sherman & Redfield on Negligence, 4 ed. § 711, states the rule and the reason for it thus : "Those who claim upon the ground that they were invited into a dangerous place must seek their remedy against the person who invited them. If they are the guests of the tenant, he, and not the landlord, is the person from whom they must seek redress for injuries caused by any defects in the premises, even though the defects existed when the lease was made ; for such persons would never have suffered any injury from these defects if they had not entered the premises ; and the entry was not made at the request of the landlord or any agent of his." Bearing in mind the distinction of cases such as those cited above, where an invitation by the landlord may be implied, this rule limits the liability of lessor and lessee to his own acts with reference to a stranger.

Do the facts in this case amount to an implied invitation by the landlord ? We think not. In *Gordon* v. *Cummings*, and *Learoyd* v. *Godfrey*, the landlords were in control of the dangerous passageways and so, themselves, held out the invitation to enter. So in places where the public go the owner is held liable because of his participation in a nuisance.

But it would be a startling proposition that every owner, who has leased property to others, is liable for its absolute security, at the time of letting, to every person whom a tenant may invite to the premises, when such owner can neither have knowledge of such entry nor the chance for warning or protection. We do not think that the law goes to this extent ; yet such a proposition would be necessary to sustain the present case.

Ordinarily a freight elevator is used by employees. Can it he said that a landlord is bound to know that it will be used by strangers ? The tenant and his servants, knowing its condition, may use it carefully and safely. If, then, the tenant invites a stranger to use it, he is the one who should give warning and look out for the safety of his guest. We are unable to see how the landlord, in such a case, can be

held responsible, without saying that nobody has a right to let property that is in any way dangerous or out of repair, even though the lessee may be willing to take it as it is and be able to use it with safety, having knowledge of the risk. Such a doctrine would be a serious limitation upon the ownership of real property.

For these reasons we conclude that, as the building in question was not a nuisance ; nor unfit for the purpose for which it was let, by reason of any secret defect which the landlord may be presumed to know, and as the plaintiff's intestate was not upon the premises by invitation of the defendant, express or implied ; and as the defendant was not in possession or control of the elevator well, the plaintiff shows no right of action against the defendant.

The demurrer to the defendant's plea is overruled, and the demurrer to the declaration is sustained. Case remitted to the Common Pleas Division for further proceedings.

*Edward D. Bassett and Edward L. Mitchell,* for plaintiff.
*Herbert Almy and Joseph C. Ely,* for defendant.