WALKER, ET AL. *v.* ELLIS.

[No. 18,620.   Filed October 3, 1955.   Rehearing denied November 17, 1955.   Transfer denied March 28, 1956.]

*Ted Lockyear, Jr.,* and *Russell S. Armstrong,* of Evansville, for appellants.

*Herman L. McCray* and *Nat H. Youngblood,* of Evansville, for appellee.

KELLEY, J.—These two actions, involving the same questions, upon petition, were authorized to be consolidated and briefed as one appeal. The singular word, appellant, in the opinion will refer to both appellants and both actions.

This appeal comes up on an assignment of error that the court erred in sustaining appellee's demurrer to appellant's third amended complaint, hereinafter referred to as the complaint. Appellant refused to plead further after the sustaining of said demurrer and judgment against appellant followed.

Said complaint charges that the appellee, as the owner of certain premises and a building located there-

on, leased the same to a named lessee for the purpose of the conduct and operation by the latter of a store for the sale of electrical and kindred merchandise to members of the general public invited to the store by the lessee by advertisements and other means.

That the front entrance to said store building was located approximately three and one-half (3½) feet from the nearest edge of the sidewalk in front of said store, and the passageway from the door of the store to the sidewalk was so built and constructed as to require a descension of approximately one (1) foot from the door to the edge of the sidewalk. That the surface of the passageway was constructed of concrete and painted and treated with a substance "which did, and ever since has" rendered the surface of the passageway "slick and unsafe for the purposes and uses required thereof" which, the complaint alleges, was that of a means of entrance and exit to and from said store by members of the general public as prospective customers of the lessee.

It is further averred that appellee, at the time of the leasing of said store and premises to said lessee, "knew and was advised" of the purpose for which they were being leased and that the premises and building thereon were to be used by members of the general public. That all of the facts "relating to the condition" of said building and premises "were known to appellee or could have been ascertained by him in the exercise of reasonable care and caution."

The appellant, the complaint alleges, on the date given, went into the store as a prospective customer, and upon leaving the same and in attempting to pass over and upon said passageway, she was caused, by reason of and as a result of said "construction and the said conditions of said passageway and the use of

said substance thereon" rendering it slick and unsafe, to slip and fall, striking the concrete with great force and violence, whereby she suffered the injuries alleged.

Appellee's demurrer rests upon the ground that the complaint does not state facts sufficient to constitute a cause of action against him. The memorandum to the demurrer contains three specifications: (1) No facts are alleged to show any legal duty owing to appellant by appellee; (2) No facts are alleged to show the violation of any legal duty owing by appellee to appellant; and (3) The facts alleged show that appellant is guilty of contributory negligence as a matter of law.

The demurrer, of course, as has often been said, admits all well pleaded facts in the complaint and all reasonable inferences therefrom. *Antioch Coal Company v. Rockey* (1907), 169 Ind. 247, 254, 255, 82 N. E. 76. For additional cases, see West's Indiana Digest, Vol. 22, Pleading, Sec. 214 (2), pp. 508-510, incl. Further, in considering a complaint challenged by a demurrer, all facts will be deemed stated that can be implied from the allegations made by a fair and reasonable intendment and such implied facts carry the same potency as those directly stated. *Cleveland, Cincinnati, Chicago and St. Louis Railway Company v. Gillespie* (1930), 96 Ind. App. 535, 540, 173 N. E. 708.

Appellee maintains, in support of the ruling of the court, that the complaint shows that the store and building were under the absolute control of the lessee without any control by appellee over any part thereof, that it makes no allegation that appellant's injury resulted from a failure to keep the premises in repair, that the facts alleged show that the defective condition of the entrance to the building was a patent defect known to the lessee and which appellant could have seen had

she looked, and that the allegations show the injury complained of was the result of a condition caused by defective construction. He further asserts that Indiana follows the common law rule that where the tenant has no redress against the landlord, those on the premises in the tenant's right are likewise barred, and that the case of *Town of Kirklin* v. *Everman* (1940), 217 Ind. 683, 28 N. E. 2d 73, is decisive of the question.

It seems clear, as appellee contends, that the complaint does not proceed upon the theory that appellee had any possession or right of control over the premises or that he failed to keep the same in repair. However, we are less inclined and more reluctant to accede to appellee's proposal that the complaint is predicated upon the charge that a defective condition caused by negligent construction occasioned the alleged injuries. We do not find from a fair reading of the complaint that it asserts appellant suffered injury because appellee had negligently constructed the leased premises.

It is not alleged in the complaint, nor do we deem it a reasonable intendment therefrom, that the manner or mode of construction of the passageway, inclining toward the entrance and declining toward the sidewalk, was, of itself, dangerous, unsafe, or the cause of appellant's fall. Under the allegations made, the combination of the descending passageway and the slick surface thereof created the condition which caused her to fall and sustain the injuires complained of. We, therefore, under such averments, cannot concede, as appellee urges, that the condition alleged to have caused appellant's injuries was a "patent defect."

While the complaint does not employ the ordinary pleading phraseology commonly used in charging negligence, yet, by reasonable intendment, it does aver that appellee owned the involved premises on which was

located an inclined concrete passageway leading from the sidewalk to the store entrance, the surface of which passageway or walkway had been painted and treated with an unnamed substance and thereby rendered slick and unsafe for foot travel; that appellee knew that the premises were to be used by the lessee as a store and that the walkway or passageway was to be used as a means of ingress and egress by members of the general public who were customers or prospective customers of lessee; that appellee knew, or by reasonable care should have known, that said passageway was slick and unsafe for the purpose intended, and, having such knowledge, he leased the premises to the tenant. From such facts, the negligence complained of appears to be that, in the nature of the intended use, it was a negligent act for appellee to lease such premises with knowledge of the said unsafe condition, or that by reasonable care he would obtain such knowledge.

This case presents one of those situations wherein it is difficult to discern whether the basic charge in the complaint is negligence or a nuisance. As we see it, this complaint, although it does not contain the word "nuisance", may yet be considered as stating facts which show the existence of one. To create and permit a public highway to become slick and slippery by the use of a substance thereon making it so, differs little, in its dangerous potentiality for harm to rightful users, from a similar condition created by permitting accumulated water on a public sidewalk to remain thereon and freeze into sheets of ice. The latter was declared a nuisance in *City of Muncie* v. *Hey* (1905), 164 Ind. 570, 74 N. E. 250, 251. No logical reason is perceived why the former should not likewise be considered in the same category.

From *Coventry Leasehold Co.* v. *Welker* (1932), 43 Ohio App. 82, 182 N. E. 688, we garner this expression: "It may be said that these two classes of cases overlap, that is, practically all nuisances have an element of negligence in them, and a negligence case may rise to the point where the thing complained of may be a nuisance." In *Metzger* v. *Schultz* (1896), 16 Ind. App. 454, 43 N. E. 886, it is stated: "A nuisance may result from the negligent acts of commission or omission of another."

Appellee gives little weight to and, in fact, seems wholly to ignore any matter of distinction between negligence and nuisance, and seemingly takes the position that a landlord or lessor, whether on the basis of negligence or nuisance, is under no liability to and owes no duty to a customer of his lessee injured on the premises where the latter are in the exclusive control of the tenant and the lessor is under no duty, by covenant or otherwise, to keep the premises in repair.

He claims, as stated above, that *Town of Kirklin* v. *Everman, supra,* establishes such rule in Indiana and we are bound by it. If the factual circumstances of that case are in substantial accord with those here appearing we, of course, are not at liberty to depart from the law as therein pronounced. However, should the facts apparent in the instant appeal impel the application of a different legal principle than that given birth by the situation in the Kirklin case, we must, perforce, resolve it and apply it.

In the Kirklin case it appears that the lessor leased to the lessee Town a water works plant on which was located a pit covered by boards or planks. In the pit was a gasoline engine fed by fuel lines and a leak therein permitted gasoline fumes to escape and accmulate in the pit. The plaintiff went to the plant to see

lessee's employee in charge of the plant about employment. At the request of the employee who had removed from over the pit a board or plank for such purpose, plaintiff descended into the pit to retrieve a fallen screw driver. Being unable to see in the darkened pit, plaintiff was handed matches by the employee who told plaintiff to light one so that he might see. The ensuing explosion resulted in plaintiff's injuries. The complaint against the lessor, the lessee, and the employee, charged the maintenance of a nuisance and negligence in burying the gasoline tank and permitting gas fumes to collect in the pit.

A casual survey of the facts just recited from the Kirklin case leads to an early conviction of dissimilarity between the decisive facts therein and those in the case before us. And the court seemed not hesitant in calling attention to such factors and in thereby limiting the scope of its opinion. The crucial phases of difference between the controlling facts there and here are exemplified by the comments of the court in its opinion.

It is therein forcibly pointed out that plaintiff's injuries were not caused by the lessor's negligent construction of the pit, but that they resulted from the deliberate removal by the lessee's employee of the protective boards or planking from over the pit and the lighting of a match in the pit at the invitation of the employee. Further, that the lessor had a right to assume that the lessee would not send its guests into the pit with instructions to light matches, and that the dangerous situation located in the pit "was not dangerous to the general public nor to strangers who might come upon . . . and use the premises as they were found . . . ."

In the case at bar, as alleged, the injuries to appellant were not the immediate result of any act of the tenant or his agent or employee. They resulted, as the complaint in effect alleges, from a situation created by appellee ". . . dangerous to the general public" and "strangers who might come upon . . . and use the premises as they were found . . . ."

As to the negligence involved, the court, in the Kirklin case, in deciding favorably to the lessor, asserted that if the pit was negligently constructed it was so safeguarded by cover and planking that it was not "reasonably calculated to injure strangers" or those who might casually come upon the premises. As to the charge of nuisance, the court remarked that an instrumentality on private property may be said to be a nuisance only "when it is of such character and so maintained, that it is reasonably and naturally calculated to injure the general public or strangers who may come upon the premises," and that the pit, with its protective boards and planks, "was not dangerous to the general public nor to strangers" who come upon and use the premises as they were found.

It is thus significantly apparent that the lessor, in the Kirklin case, did not, as the complaint here charges, create on his premises a condition unsafe for use by members of the general public and then lease the same, with knowledge of the dangerous condition, for a purpose known to him to necessitate the use of the unsafe portion of the premises by members of the public invited there by the lessee. In that case, the agent or employee of the lessee created the dangerous situation by removing the covering of the pit and inviting the plaintiff to go into and strike a match in the fume-filled pit.

Appellee, nevertheless, insists that the court, by deeming sound the rule quoted from 16 R. C. L., §588, page 1067, thereby declared, in finality, that a patron or customer of the lessee is on the premises at the latter's invitation and not that of the landlord, and possesses no greater rights against the landlord than has the tenant.

That such is the general rule may be conceded. That the court considered it to be without any exceptions is contradicted by the language it used, to some of which we have adverted, and the implications permissible therefrom. A careful study and consideration of the Kirklin case will provide the information that the rule quoted by the court was not relied upon by it in reaching its conclusion and that the same result would have been achieved without reference to the quoted rule. The court found for the lessor on the nuisance count because, if it was a nuisance, it was of a nature and so protected as not to be calculated to injure the general public or strangers using the premises as they were found; and it found for the lessor on the negligence theory because no act of negligence by the lessor immediately causing the injuries, was proved, the negligence being that of the lessee's employee. We cannot, therefore, accept it as a ruling precedent in this case.

As authority that the landlord, in the absence of a covenant or agreement to repair, is not liable to the tenant for personal injuries caused by a defective condition of the leased premises, appellee cites and relies upon *Purcell* v. *English* (1882), 86 Ind. 34, and *Guenther* v. *Jackson* (1922), 79 Ind. App. 127, 137 N. E. 582. The general principle declared in those cases is acceptable.

However, it is to be noted that in those cases the condition which gave rise to the injuries to the tenant

either developed while the tenant was in possession and as a result of his failure to keep the premises in repair, there being no duty on the landlord to maintain or keep in repair, as in the Purcell case, or the landlord was without any knowledge of the defective condition, as in the Guenther case.

A survey of the Purcell case shows that the court took great care to limit the application of the rule it dealt with. It specifically pointed out that the cause of the tenant's injuries was not the unsafe condition of the stairway "at the time the premises were leased," and that it was unnecessary to decide whether a landlord hiring apartments to many tenants is liable for faults in construction or permanent defects in the common passage ways. Thus the court quite definitely indicated that exceptions existed to the general rule.

Appellee cites various cases from other jurisdictions as supporting his contention of no liability. Some of the cases contain statements favorable to his cause, but most are easily distinguishable upon the facts. We found none involving the same are closely similar facts and factors to those alleged in the complaint before us.

At this point it may be well, at the risk of repetition, but to the end of requisite clarity and necessary remembrance, to again call attention to the vital factors, which by direct allegation and by implication and reasonable intendment, are contained in said complaint. They are: (1) Appellee created on his premises a passageway or walkway from the sidewalk to the entrance into its building thereon, which by reason of its inclination and slippery surface, was unsafe for use on foot; (2) Appellee knew, or, by reasonable care, should have known, that said passageway was unsafe for such usage; (3) Appellee leased the premises, containing said unsafe passageway, for the express purpose of the

lessee's conduct and operation thereon of a public store; (4) Appellee knew that patrons and customers of the lessee's store, they forming a part of the general public, would use said unsafe passageway on foot as a means of ingress to and egress from said store; and (5) That with knowledge of its intended use and the unsafe condition thereof, appellee, nevertheless, demised said premises. In this connection we may remark that the referred to passageway, as located and described in the complaint, was, in practical effect and use, a continuation of the public sidewalk to the store entrance, and, therefore, bore the nature of a public way.

The real question, then, presented by the demurrer to said facts, they being for the purpose taken as true, is not whether the appellee, being out of possession and control of the premises, is liable for a failure to repair, but whether he is shown to be liable either for negligence in leasing the premises with knowledge of their unsafe condition for the use intended, or for leasing the same with a self-created nuisance thereon or a condition which, in the nature of things, must become so by their use.

Looking at our Indiana cases, which have touched on the question, with a view of ascertaining the broad general rule for which they have indicated a preference, rather than the particular rule applied to the particular facts involved, it seems safe to say that in one way or another, they have leaned, in the main, to the principle laid down in the English cases (see the cases cited on page 23 of 53 Ind. 21, and the reference to *Penruddock's Case,* 3 Coke, Part 5, on page 458 of 16 Ind. App. 454) and particularly the case of *Todd* v. *Flight* (1860), 9 C. B. N. S. 377, 30 L. J. C. P. N. S. 21, 7 Jur. N. S. 291, 3 L. T. N. S. 325. In the latter, Earle, Ch. J., held liable an owner who, with

knowledge, leased his premises in a condition dangerous to the public or an adjoining owner. It seems to be indicated by the Indiana cases that the outgrowth of the principle of the English rule has been relied on as one of the exceptions to the general rule of no liability of the landlord for an injury received on the leased premises, although no specific reference to the English cases was made.

In *Helwig* v. *Jordan* (1876), 53 Ind. 21, the court adopted the following declaration in 1 Wilson Superior Court Rep. 447: "One who erects a nuisance and afterwards . . . leases his real estate, receiving rent therefor and knowing, or having reason to believe, that the use of the property for the purpose for which it is leased will prove to be injurious to the property of others, or become a nuisance, will be liable to an action for an injury resulting therefrom."

The admission made in *Deller* v. *Hofferberth* (1891), 127 Ind. 414, 26 N. E. 889, serves to further reveal the line of the court's thinking. Therein the court adopted the reasoning of the court in *Shindelbeck* v. *Moon*, 32 Ohio St. 264, wherein it was said that in the absence of an agreement by the landlord to keep the premises in repair, he is not liable for injuries arising from the defective condition of the premises, *"when the defect arises during the continuance of the lease,* although it is admitted that *if a nuisance existed at the time of the demise, or in the nature of things became so by its use,* he would be liable." (Italics supplied.)

*Metzger* v. *Schultz* (1896), *supra,* contains much that is worthy of note in our present investigation. In part, the court said:

"It is also the general rule that the occupier of lands is prima facie responsible for any nuisance

maintained thereon and not the owner. But to this rule there are several well-defined exceptions. The owner is responsible . . . *if he creates a nuisance,* and *then demises with the nuisance thereon,* although he is out of possession. . . . an action will lie against one who erects a nuisance without any request to abate it; . . . If the owner create a nuisance, *knowledge of its existence is necessarily involved in the act.* . . . If a landlord demise his property, *the law requires him to know its condition at the time he accepts a tenant . . . ."* (Our italics.)

In *Dammeyer, et al.* v. *Vorhis* (1916), 63 Ind. App. 427, 113 N. E. 764, as in the above cited Town of Kirklin case, the act of the tenant in leaving open the doors of a cellar-way, which doors were properly constructed and in good condition when the premises were leased, was the cause of plaintiff's injury, and the court decided for the owners on the ground that the doors were not a nuisance per se but became so by the act of the tenant in leaving them open. In the course of its opinion the court said, on page 433: ". . . where the owner leases premises, which are a nuisance, . . . *or must, in the nature of things, become so by their use,* and receives rent, then, *whether in possession or out,* he is liable." (Our italics.)

An exhaustive research warrants us, we believe, in earnestly asserting that we have found no case, nor have we been directed to any, in this state, which holds that a landlord who creates or knowingly maintains on his premises that which is, or which by the projected and intended use thereof may become a nuisance, whether actual or incipient in nature, existing at the time of the demise, can, by the simple expedient of leasing the premises to a tenant, avoid asserted liability for injuries thereafter occasioned thereby to third persons rightfully on the prem-

ises. It would seem that a landlord who, under such conditions, thus leases his premises may be presumed to have intended the continuance of such actual or incipient nuisance thereof.

The three important classes of cases affecting the liability of a landlord were generally defined and set forth in *Joyce* v. *Martin* (1887), 15 Rhode Island 558, 10 Atl. 620, and were restated in *Henson* v. *Beckwith* (1897), 20 Rhode Island 165, 37 Atl. 702, 78 A. S. R. 847, 848, in this wise:

1. Where the owner leases premises which are a nuisance, or must, in the nature of things, become so by their use, then, whether in or out of possession, he is liable to injuries resulting from such nuisance.
2. Where the premises are let for rent or profit to be used for purposes for which they are not fit or safe, and all this was known or ought to have been known to the lessor, he is liable for injuries resulting from such use.
3. Where the property, at the time of the demise, is not a nuisance, and an injury happens by some act of the tenant or while he has entire possession and control of the premises, the owner is not liable.

In Restatement of the Law, Torts, §359, the rule is thus stated:

A lessor who leases land for a purpose which involves the admission of a large number of persons as patrons of his lessee, is subject to liability for bodily harm caused to them by an artificial condition existing when the lessee took possession, if the lessor.

(a) knew or should have known of the condition and realized or should have realized the unreasonable risk to them involved therein, and

(b) had reason to expect that the lessee would admit his patrons before the land was put in reasonably safe condition for their reception.

From 16 R. C. L., Landlord and Tenant, §594, page 1076, et seq., we take the following:

"It is the well settled rule that the landlord is properly chargeable with liability to a stranger when the cause of the injury to the latter is a nuisance existing on the premises at the time of the demise. No person can create or maintain a nuisance upon his premises and escape liability for the injury occasioned by it to third persons. Nor can a lessor so create a nuisance and then escape liability for the consequences by leasing the premises to a tenant. . . . The theory upon which the landlord is held liable where the premises are leased with a nuisance is that he created the nuisance, and will be presumed to have intended the continuance thereof, . . . . . . . the act of leasing with the nuisance is held to raise the presumption that he intended the nuisance to be continued. Prior to and at the time of the lease, it was the duty of the lessor to put an end to the nuisance. If he fails to do this and leases the premises with the nuisance on them, he may be deemed, and is deemed, to authorize the continuance of the nuisance, and is therefore liable for the consequences of such continuance. Whether, therefore, the defect is one of original construction, or arises from a failure to repair, or from the maintenance on the premises of any condition endangering the health or safety of strangers, whatever its nature, if it constitutes a nuisance, the lessor will be responsible for its consequences if he leases the premises with the nuisance upon them, and thus authorizes its continuance." See, also, 92 A. S. R. 526; 50 L. R. A. (N. S.) 287n; 52 C. J. S., Landlord and Tenant, §431a., page 105.

Where, as here alleged in the complaint, premises have been leased for a purpose which contemplates their use by the public, the courts seem to regard such circumstances as one which makes of such cases a class peculiar in itself and forming an exception to the general rule of caveat emptor.

92 A. S. R. 499, §11 D.(5), page 515; 32 Am. Jur., Landlord and Tenant, §§667 and 668; 123 A. L. R. 870, §111 b., page 873; *Trondle* v. *Ward* (1942), 129 N. J. L. 179, 28 A. 2d 509; *Hayes, et ux.* v. *Richfield Oil Corp.* (1952), 38 Cal. 2d 375, 240 P. 2d 580, 583.

> " 'Where premises are leased for public or semi-public purposes, and at times of lease conditions exist which render premises unsafe for purpose intended, or constitute a nuisance, and landlord knows or by the exercise of reasonable care ought to know of conditions, and a third person suffers injury on account thereof, landlord is liable, because third person is there at invitation of the landlord, as well as of tenant.' *Fraser* v. *Kruger* (C. C. A.) 298 F. 693, syl. par. 4. See, also, *Copely* v. *Balle,* 9 Kan. App. 465, 60 P. 656; *Burner* v. *Higman & Skinner Co.,* 127 Iowa 580, 103 N. W. 802; *Colorado Co.* v. *Giacomini,* 55 Colo. 540, 136 P. 1039, L. R. A. 1915B, 364; 1 Tiffany on Landlord and Tenant, 680; and 1 Shearman & Redfield (6th Ed.) 307." *Turner* v. *Kent* (1932), 134 Kan. 574, 7 P. (2d) 513; *King* v. *New Masonic Temple Ass'n.* (1942), 51 Cal. App. 2d 512, 125 P. 2d 559, 560. The aforesaid public purpose rule is applicable to stores. 32 Am. Jur., Landlord and Tenant, §668, note 5, page 536; *Turner* v. *Kent* (1932), *supra.*

Actions such as the one here counted upon, frequently have taken the form indifferently of one for negligence or nuisance. As previously stated it seems that in this action, the negligence alleged upon is the leasing, for the express purpose of a store to which the public will be invited, of premises known to be unsafe for use or travel. The complaint can also be viewed as alleging the leasing of premises containing a nuisance or with a condition which, by the intended use thereof by members of the public, may thereby become a nuisance.

"If the premises which are rented are in such dangerous condition as to constitute a nuisance at the time of the renting, the lessor remains liable for the consequences of the nuisance, notwithstanding that his lessee may also be liable. . . . If the premises are rented for a public use for which he knows that they are unfit and dangerous, he is guilty of negligence, and may become responsible to persons suffering injury while rightfully using them." *Barrett* v. *Lake Ontario Beach Imp. Co.* (1903), 174 N. Y. 310, 66 N. E. 968, 969.

It is, of course, the general and elementary rule that liability in tort is an incident to occupation and control, or, as otherwise stated, that possession and control determine the liability. But this rule, as stated in general terms, must be accepted upon the premise that no other element has entered in. A fair consideration of the complaint before us shows, we think, the entry of the element of the leasing by appellee of premises to be used by the public which he knew to be unsafe and dangerous to such users.

As previously indicated, we are not here required to determine whether the complaint savors more of the theory of negligence than of nuisance, or vice versa. Suffice it to say that as a matter of pleading, we think the complaint alleges facts sufficient to state a cause of action upon whichever of the two theories the court and the parties may adopt and proceed upon at the trial. The two theories, under the particular facts here alleged, are not inconsistent or contradictory, although they may be viewed as distinctive. ". . . if the plaintiff states his cause of action upon two distinct theories, in the same paragraph of complaint, he can proceed only upon one, and must establish his right of recovery under the theory adopted,

or fail in his action. *Holderman* v. *Miller,* 102 Ind. 356, 1 N. E. 719, and cases cited; 21 Enc. of P. & P., p. 650." *State ex rel. White* v. *Scott* (1908), 171 Ind. 349, 86 N. E. 409. If, as we have concluded, the complaint before us is good on either theory and if the facts stated entitle appellant to any relief, it is sufficient as against appellee's demurrer for want of facts. *Kirsch* v. *Harker* (1950), 120 Ind. App. 66, 89 N. E. 2d 924.

Appellee says the complaint shows appellant to be guilty of contributory negligence as a matter of law. With this we are not in accord. Contributory negligence is a matter of defense and is generally a question for the jury. So long as the facts stated in the complaint do not force the legal conclusion that there was contributory fault, the question remains one for the jury and cannot be raised by a demurrer. It seems evident that the facts stated in appellant's complaint do not necessarily force such conclusion.

There are no allegations in the complaint, nor any from which, by fair intendment, it could be implied, that the slick condition of the walkway was such as to be obvious to a person using ordinary care in observing the condition of the passageway. It follows that whether appellant under all the attendant circumstances, exercised ordinary care is a matter of fact for the jury.

Our opinion should not be viewed as holding that every owner who has leased property to others is liable for its absolute security, at the time of the letting, to every person whom a tenant may invite to the premises, particularly when such owner can neither have knowledge of such entry nor the chance for warning of protection.

In the complaint under consideration, it is alleged that appellee knew, or should have known by reasonable care, of the dangerous and unsafe condition of the walkway at the time of the letting, and knew that the very purpose of the leasing was the conduct and operation by the lessee of a store in the leased building, the entrance to and exit from which required the patrons and customers of the store to walk over and upon the slick and unsafe passageway. Our holding is to be accepted in the light of such alleged facts.

The judgment in each of the appealed cases is reversed, with instructions to overrule appellee's demurrer to appellant's third amended complaint in each case.

NOTE.—Reported in 129 N. E. 2d 65. Petition to transfer denied, 133 N. E. 2d 54.