CHRYSLER CORPORATION et al.,
Plaintiffs-Appellants,

v.

M. PRESENT COMPANY, INC.,
Defendant-Appellee.

PENN CENTRAL COMPANY,
Plaintiff-Appellant,

v.

M. PRESENT COMPANY, INC., et al.,
Defendants-Appellees.

Nos. 72–1726, 72–1727.

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1973.

Decided Feb. 5, 1974.

---

Aribert L. Young, Howard J. De-Trude, Jr., William A. Wick, John A. Stocker, Indianapolis, Ind., for plaintiffs-appellants.

Leo L. Kriner, Jerry P. Belknap, Indianapolis, Ind., for defendants-appellees.

Before SWYGERT, Chief Judge, and FAIRCHILD and STEVENS, Circuit Judges.

FAIRCHILD, Circuit Judge.

These are appeals from a judgment dismissing consolidated actions upon their merits, defendant's motion for summary judgment having been granted.

Plaintiffs brought their actions to recover damages for loss of property in a warehouse fire, October 8, 1966, in Indianapolis.[1]  Although defendant M. Present Company, Inc. was the owner of

---

1. Jurisdiction is founded on diversity.  All parties accept Indiana law as controlling on substantive questions.

the warehouse, it was occupied at the time of the fire by A.A.A. Warehouse Corporation, defendant's lessee. Several plaintiffs, like Chrysler, were owners of goods which had been placed in the warehouse for the purpose of storage. Penn Central's loss arose primarily from the destruction of railroad cars which Penn Central's predecessor had delivered on a side track inside the warehouse.

M. Present Company was alleged, in substance, to have been negligent in leasing its building to A.A.A., with knowledge that it would be used as a warehouse, when it knew or should have known that the water supply had been and was permitted to remain disconnected, that the fire extinguishers, fire hoses, valves and similar extinguishing equipment (expressly included in the lease as equipment of the building) were defective, inadequate, and inoperable, that the building lacked fire curtains or fire walls and was not adequately protected against fire. Although the complaint is phrased in terms of negligence with respect to leasing the property with the knowledge specified, it also sufficiently asserts that the various deficiencies in equipment and construction were present at the time of leasing.

After a number of procedural skirmishes, the district court granted summary judgment for defendant M. Present Company and certain other defendants. For the most part the facts recited by the district court are undisputed. M. Present Company had leased the entire premises to A.A.A. under a written lease, October 9, 1964; the lease contained no covenant by M. Present Company to keep the premises in repair, except for certain repairs to the roof, not alleged to have contributed to the fire; there is no claim that the conditions said to constitute negligence on the part of M. Present Company were concealed from A.A.A.; the portion of the warehouse in which plaintiffs' property was located was the storage area.

The district court also asserted that the storage area was not thrown open for the public, and admission was carefully restricted. Plaintiffs argue that they had sufficiently shown that there is an issue on this point. It appears to be conceded that if M. Present Company contemplated that its lessee, A.A.A., would generally invite members of the public to enter the storage area in person, the law of Indiana would subject M. Present Company to liability for injury to person or property of such frequenters, resulting from defective conditions existing at the time of leasing. Walker v. Ellis, 126 Ind.App. 353, 129 N.E.2d 65 (1955), transfer denied, 235 Ind. 692, 133 N.E.2d 54. Thus if there were shown to be a genuine issue of fact concerning the use of the storage area by members of the public in person, it was error to grant summary judgment.

Plaintiffs' principal contention, however, is that the so-called public purpose doctrine, recognized as part of the law of Indiana by Walker v. Ellis, applies to the storage area in any event and subjects M. Present Company to such liability because M. Present Company, as owner-lessor, was aware that A.A.A., its lessee, would extend a general invitation to members of the public to deposit their goods in the leased property, for storage. If this contention be correct, it would be immaterial whether there were a general invitation to members of the public to enter the storage area in person.

Plaintiffs also argue, independently of the public purpose doctrine, that because M. Present Company reserved in its lease the right to enter the premises and make repairs, there was an issue of fact whether it was in control of the premises so as to be subject to liability to customers of A.A.A. for damages caused by defective conditions.

Finally, Penn Central contends that a side track agreement between .it and M. Present Company puts its case upon a special and more advantageous footing.

1.  *Applicability of the public purpose doctrine.*

■ As a general rule a landlord is not liable to invitees of his tenant for

injury caused by defective conditions existing at the time of the lease. Prosser, Law of Torts, 400 (4th ed., 1971). The theory is that a vendor of land is not subject to liability to his vendee or others for the condition existing at the time of transfer, caveat emptor applying, and that a lessor is similarly not liable because the lease is regarded as equivalent to a sale for the term of the lease. Courts have, however, carved out several exceptions to the general rule of non-liability, calling for liability to the lessee and others upon the land, or to the latter, alone. See generally 2 Powell, Real Property ¶ 234 (rev. ed., 1971); Prosser, *supra*, § 63; Restatement, Torts 2d §§ 356–62.

The policy considerations underlying the exceptions are stated in Comment *a* under § 356 of the Restatement, as follows:

"These exceptions have been due in large part to increasing recognition of the fact that tenants who lease defective premises are likely to be impecunious and unable to make the necessary repairs which their own safety and that of others may demand; that one who is in possession of the premises only for a limited term does not have the same incentive to maintain them in good condition as the lessor to whom they will revert at the end of the lease; and that the landlord who receives benefit from the transaction in the form of rent may properly be required to assume in return at least certain limited obligations with respect to the safety of others."

█ The public purpose exception applies where property is leased for a purpose which involves the admission of the public. It is then the rule that "the lessor is under an affirmative duty to exercise reasonable care to inspect and repair the premises before possession is transferred, to prevent unreasonable risk of harm to the public." Prosser, at 403.

As Mr. Justice, then Judge, Cardozo observed, "We may say that those who enter a structure designed for public amusement are there at the invitation, not only of the lessee who maintains it, but also of the lessor who has leased it for that purpose, and that the latter's liability is merely an instance of the general rule which charges an owner of property with a duty toward those whom he invites upon it. . . . We may say more simply, and perhaps more wisely, rejecting the fiction of invitation, that the nature of the use itself creates the duty, and that an owner is just as much bound to repair a structure that endangers travelers on a walk in an amusement park as he is to repair a structure that endangers travelers on a highway. Whatever the underlying principle that explains the rule, the rule itself is settled. The owner of such a park must use all reasonable care to make its structures safe before he leases it for his profit." Junkermann v. Tilyou Realty Co., 213 N.Y. 404, 108 N.E. 190, 191 (1915).

In 1955 the Appellate Court of Indiana expressly recognized the public purpose exception in Walker v. Ellis, 126 Ind.App. 353, 129 N.E.2d 65, transfer to the Supreme Court denied 235 Ind. 692, 133 N.E.2d 54. There a patron of a store brought action against the storekeeper's lessor for injuries sustained in a fall. The trial court sustained a demurrer based on the lessor's lack of duty. The Appellate Court reversed, saying that "where premises have been leased for a purpose which contemplates their use by the public, the courts seem to regard such circumstances as one which makes of such cases a class peculiar in itself and forming an exception to the general rule of caveat emptor." 129 N.E.2d at p. 73.

█ M. Present Company concedes that to the extent the public purpose exception is properly applicable, there is no distinction between personal injury and property damage cases. It argues, however, that the exception, at least as recognized in Indiana, is limited to premises which are open to the public to enter in person, and does not extend to

premises which are held open to the public for the storage of goods, and only for such entry in person as may be incidental to such storage.

The use by the public for storage of goods is within the language of Walker v. Ellis, but it is true that the cases announcing the doctrine seem, like Walker v. Ellis, to have involved places held open to the public for entry in person,[2] although, as M. Present Company concedes, recovery has been allowed for damage to property as well as for personal injury.

It seems to us that similar policy reasons exist for subjecting the owner lessor to liability to a person who responds to a general invitation to store his goods as to a person who responds to a general invitation to enter in person. The possible distinctions which occur to us are (1) that personal safety is of greater significance to the community than the safety of property, and (2) that it is more realistic to expect the owners of stored goods to insure them and thus obtain protection from loss than to expect members of the public to be adequately insured against accident. Neither distinction, however, seems to be a sufficient reason for insulating an owner lessor from duty and liability for defective conditions of which he was or should have been aware.

No case has been cited, nor have we found any, in which the application of the public purpose exception to a commercial warehouse has been directly considered and ruled upon. In an early case, the Court of Appeals of New York drew an analogy which is relevant here, although the premises considered were a theater:

"If he [the lessor] lets a building for a warehouse, knowing that it is so weak and imperfectly constructed that the floors will break down from the weight necessarily to be placed on them, his negligence imposes liability upon him for injury to the person or property of anyone who may lawfully be upon the premises using them for the purposes for which they were demised." Edwards v. N. Y. & H. R. R. Co., 98 N.Y. 245, 249 (1885). See also Barrett v. Lake Ontario Beach Imp. Co., 174 N.Y. 310, 66 N.E. 968, 969 (1903).

The New York court later declined to apply the public purpose exception to a warehouse in which storage was not shown to have been available to anyone but the lessee. Campbell v. Elsie S. Holding Co., 251 N.Y. 466, 167 N.E. 582 (1929). Although noting that the language above quoted from *Edwards* and its repetition in *Barrett* were dicta, the court also pointed out that in those cases "the court spoke concerning warehouses which served a public use." Warehouses are private if they do "not carry anything in storage except for their owners." J. Frederick, Using Public Warehouses, 13 (1957).

The public purpose exception has been considered applicable to piers which are generally available for use. Swords v. Edgar, 59 N.Y. 28, and CIA Exportadora E. Importadora Mex. v. Marra Bros., 59 F.Supp. 989, 991 (S.D.N.Y., 1944).

That the public purpose exception is recognized in Indiana is clear. Our problem in this case is to discern the content of the exception. Is it confined to a use where the property is held open for entry of members of the public in person or does it include such a use as the storage of goods for whoever among the public may deposit them? We find no satisfactory logical policy ground for excluding the latter.

We note a recent and significant decision of the Supreme Court of New Hampshire, authored by Chief Justice Kenison. The doctrine of "landlord nonliability in tort" is discarded. "Henceforth, landlords as other persons must exercise reasonable care not to subject others to an unreasonable risk of harm." Sargent v. Ross, 308 A.2d 528, 534 (N.

---

2. See 49 Am.Jur.2d 727 ff., Landlord and Tenant §§ 782–785; Restatement, Torts 2d § 359, Illustrations; Annot. 17 A.L.R.3d 873.

H., 1973). It is stated as a corollary that public use and other factors formerly bringing a case within one of the recognized exceptions to landlord nonliability will henceforth be relevant only inasmuch as they bear on the basic tort issues. See also Presson v. Mountain States Properties, Inc., 18 Ariz.App. 176, 501 P.2d 17, 20 (1972) for discernment of a trend in this area toward disfavoring caveat emptor.

We by no means speculate that Indiana courts will adopt the New Hampshire formulation. That would be an inappropriate role for this court. But although the observed trend seems almost always to involve cases of risk to bodily security, we think the trend also makes less credible any prediction that exceptions to the rule of landlord nonliability will be closely confined.

■ Accordingly we conclude that the public purpose exception deprives M. Present Co. of insulation from liability to plaintiffs. It follows that the issues raised as to its negligence in leasing the premises in the condition they allegedly were are material and must be resolved.

### 2. Plaintiffs' claim as to M. Present Company's control of the premises.

■■ Where an owner leases part of his premises and retains control of part, he is subject to liability with respect to the part which he controls. If it can be shown that a landlord, although purportedly transferring possession to a lessee, has retained control, he is also subject to liability. Plaintiffs contend that the reservation by M. Present Company of the right to repair, and certain activity in exercise of that right, are themselves sufficient to create a genuine issue of fact whether, notwithstanding the lease, M. Present Company was in control of the warehouse at the time of the fire.

■ Plaintiffs rely on decisions from other jurisdictions which hold either that a reservation of the right to enter and repair is a reservation of control in the landlord, sufficient to subject him to liability [3] or that such reservation creates a jury question whether the landlord retained such control as to subject him to liability.[4] We see no indication in the reservation of the right to repair that M. Present Company retained control in any larger sense. It appears that under the law in Indiana, a reservation by the landlord of the right to repair is not enough to subject him to liability, but a covenant to repair is required. "The Law is well settled that in general a landlord cannot be held liable for negligence in failing to repair leased property in the absence of a covenant to repair." Stover v. Fechtman, 140 Ind. App. 62, 222 N.E.2d 281, 283 (1966).

Accordingly, liability of M. Present Company can not be predicated upon its reservation of the right to repair.

### 3. Issues peculiar to Penn Central.

Penn Central alleges in Count II of its complaint that the railroad cars lost in the fire had been delivered to A.A.A. pursuant to a private side track arrangement covered by an agreement between Penn Central's predecessor (hereinafter the "Railroad") and M. Present Company. M. Present Company, if negligent as alleged, was subject to liability to the Railroad under the public purpose exception, already discussed. We conclude that M. Present Company also had a contractual duty to the Railroad, although such duty may turn out to have no more than duplicating significance.

The sidetrack agreement contemplated a track, leading from the Railroad's line, and serving and entering the warehouse. Up to a point called the clearance point, the track was owned and to be maintained by the Railroad; beyond that

3. DeClara v. Barber Steamship Lines, 309 N.Y. 620, 132 N.E.2d 871, 874 (1956); Montgomery Ward & Co. v. New York Central Railroad Co., 389 F.2d 556 (2d Cir., 1968); Levy v. Logan, 99 Ga.App. 253, 108 S.E.2d 307, 309. Cf. Honeycutt v. Cincinnati Metropolitan Hous. Auth., 114 Ohio App. 311, 175 N.E.2d 116 (Ct. of App. Ohio, 1961).

4. La Scalea v. Woolsey Holding Corp., 14 A. D.2d 912, 221 N.Y.S.2d 551 (1961).

point by M. Present Company. The agreement includes provisions for construction and maintenance of the ·track and devices to be used in connection with it. Each party undertook various obligations. The agreement does not refer to the Railroad's propelling cars along the track into the warehouse, but that process was surely contemplated.

When the warehouse was leased to A.A.A., there was no further agreement with the Railroad by which A.A.A. would be substituted for M. Present Company under the side track agreement. The lease may well have included a transfer of the rights of M. Present Company under the side track agreement, but an assignment, without the consent of the Railroad, did not relieve M. Present Company of obligations under the agreement. Navin v. New Colonial Hotel, 228 Ind. 128, 90 N.E.2d 128 (1950), 6 Am.Jur.2d 293, Assignments, § 110. Although a clause in the agreement providing that M. Present Company will not permit the use of the track by another without the consent of the Railroad has been referred to as if it prohibited assignment without consent, an express nonassignability clause is unnecessary.

If any course of dealing between the time of the lease to A.A.A. and the fire might be deemed an acceptance by the Railroad of A.A.A. as a substitute for M. Present Company, that would be an issue for proof at trial. Absent such proof, the Railroad would be deemed to have entered the warehouse as an invitee of M. Present Company, and would be entitled to performance by M. Present Company of the agreement.

Paragraph FIFTH of the agreement provided in part as follows:

"Except as herein otherwise specifically provided, in respect of all loss or damage to property, other than by fire caused as aforesaid [by locomotives], or in respect of injury to or death of persons caused by or in connection with the construction, operation, maintenance, use, presence or removal of said track, (a) the RAILROAD COMPANY shall assume responsibility for and hold the INDUSTRY harmless from all losses (including Workmen's Compensation), damages, claims and judgments arising from or growing out of the sole actionable acts or omissions of the RAILROAD COMPANY, its agents or employees; (b) the INDUSTRY shall assume the responsibility for and save the RAILROAD COMPANY harmless from all losses (including Workmen's Compensation), damages, claims and judgments arising from or growing out of the sole actionable acts or omissions of the INDUSTRY, its agents or employees; and (c) the parties hereto shall equally bear all losses (including Workmen's Compensation), damages, claims and judgments arising from or growing out of the joint or concurring actionable acts or omissions of both parties hereto, their respective agents or employees."

We think it follows from paragraph FIFTH that if the Railroad, though exercising ordinary care, sustains loss or damage, or is subjected to liability to a third party, on account of the railroad cars on the side track, or their contents, as a result of a failure of M. Present Company to exercise ordinary care, M. Present Company has a contractual liability to compensate the Railroad for such loss or damage or hold it harmless from such liability.

It follows that Count II should be reinstated, as well as Count I, although it may turn out to make no practical difference whether recovery is pursued on a tort or contract theory.

Penn Central also asserted a claim against American District Telegraph Company, Inc. (ADT). ADT allegedly was responsible for maintenance of a fire warning system, and negligently performed various duties in that respect. Penn Central's complaint against ADT was dismissed, although the reason for dismissal was not stated and may have been the result of oversight, other plaintiffs having voluntarily dismissed as against ADT. ADT did not file a brief

on this appeal. Reversal and reinstatement of the complaint of Penn Central against ADT is appropriate in the light of the record before us, although we express no opinion as to the ultimate merit of the claim.

The judgment appealed from is reversed and the cause remanded for further proceedings consistent with this opinion.