Paula Ann YATES, Appellant–Plaintiff,

v.

JOHNSON COUNTY BOARD OF COMMISSIONERS, Edinburgh Community School Corporation, Town of Edinburgh, and Mario Manzini, d/b/a Mario Manzini Entertainment Agency, Appellees–Defendants.

No. 41A01–0801–CV–6.

Court of Appeals of Indiana.

June 20, 2008.

John R. Helm, Schreckengast Helm & Cueller, Indianapolis, IN, Attorney for Appellant.

William H. Kelley, Shannon L. Robinson, Kelley Belcher & Brown, Bloomington, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Paula Yates appeals the trial court's grant of summary judgment in favor of the Edinburgh Community School Corporation ("the School Corporation") in her personal

injury negligence action against the School Corporation and others. We reverse.

## Issues

The restated issues before us are:

I. whether the trial court correctly concluded that the School Corporation owed no duty to Yates; and

II. whether Yates was contributorily negligent as a matter of law.

## Facts

In the spring of 2005, the Town of Edinburgh ("the Town") decided to host a circus, to be put on by the Kelly Miller Circus ("the Circus").[1] The hope was to raise some money for the Town's parks and recreation department. The Town decided that it wanted to hold the Circus on a plot of land known as "School Hill." App. p. 265. The School Corporation owns this land. A school used to be located on top of this small plateau, but the building was torn down many years ago. However, a set of stairs that used to lead to the school still goes to the top of one side of School Hill. The only other way to get to the top of School Hill is to ascend a grassy incline. To use School Hill, the Town executed a "Facility Usage Request" with the School Corporation. *Id.* The request gave the Town permission to use School Hill on May 10, 2005, for the express purpose of hosting a circus with an expected attendance of "lots of people." *Id.* The Town did not pay the School Corporation.

Yates decided to attend the Circus. She parked on a street near the stairs, and ascended the stairs without incident. The stairs have one railing down the middle, but no side rails. The last step at the bottom, before the sidewalk, is considerably longer than the rest of the steps. There is no working lighting near the stairs. When Yates left the Circus, dusk was approaching and she was carrying her three-year-old grandson. When she reached the last, extended step of the stairs, she did not consciously realize there was another dropoff to the sidewalk and/or did not see the dropoff. This apparently caused her to fall, resulting in a broken toe and alleged lingering hip and back pain.

On April 20, 2006, Yates filed suit against the School Corporation, the Town, the Circus, and the Johnson County Board of Commissioners, who later were dismissed from the action. On April 9, 2007, the School Corporation moved for summary judgment, contending that it owed Yates no duty or, in the alternative, that Yates was contributorily negligent as a matter of law. The Town filed its own motion for summary judgment on May 4, 2007. On November 7, 2007, the trial court granted the School Corporation's motion for summary judgment and denied the Town's motion. Yates now appeals.[2]

## Analysis

 Our review of a grant of summary judgment is whether there are genuine issues of material fact, and whether the moving party is entitled to judgment as a matter of law. *Rood v. Mobile Lithotrip-*

---

1. Yates originally incorrectly named Mario Manzini Entertainment Agency as the circus owner; she later amended her complaint to add Kelly Miller Circus as the proper defendant and Mario Manzini was dismissed as a defendant. The parties, however, still list Mario Manzini as a defendant on their briefs.

2. The Town had sought certification of the denial of its summary judgment motion for interlocutory appeal. The trial court certified its ruling for interlocutory appeal, but this court declined to accept jurisdiction of the case. Yates filed a motion with this court requesting consolidation of this appeal with the Town's appeal. Because we will not be considering an interlocutory appeal by the Town, the motion requesting consolidation is moot.

*ter of Indiana, Ltd.,* 844 N.E.2d 502, 506 (Ind.Ct.App.2006). We construe all evidence in favor of the party opposing summary judgment, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* We must carefully review a grant of summary judgment in order to ensure that a party was not improperly denied his or her day in court. *Reeder v. Harper,* 788 N.E.2d 1236, 1240 (Ind.2003). Where, as here, a trial court enters findings and conclusions with a summary judgment order, they do not bind us, although they may facilitate appellate review and offer valuable insight into the trial court's rationale for its decision. *Turner v. Stuck,* 778 N.E.2d 429, 431 (Ind.Ct.App.2002). We will affirm summary judgment if sustainable upon any theory or basis found in the record upon appeal. *Id.*

■ The tort of negligence has three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Id.* at 385. Summary judgment is appropriate if the undisputed material evidence negates one of these elements. *Id.* Summary judgment, however, is "rarely appropriate" in negligence cases. *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind.2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id.*

### I. Premises Liability–Duty

■ The trial court specifically found that the School Corporation owed no duty to Yates. The question of whether a duty is owed in premises liability cases depends primarily upon whether the defendant was in control of the premises when the accident occurred. *Beta Steel v. Rust,* 830

N.E.2d 62, 70 (Ind.Ct.App.2005). "The rationale behind this rule 'is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm.'" *Id.* (quoting *Rhodes,* 805 N.E.2d at 385). Although whether a duty exists usually is a question of law, the existence of a duty sometimes depends upon underlying facts that require resolution by the trier of fact, and this may include questions regarding who controlled property at the time and place of an accident. *Id.* "Possession and control of property for premises liability purposes has been described as a question of fact involving occupation and intent to control the particular area where the injury occurred." *Id.*

■ The School Corporation argues extensively that it gave up possession and control of School Hill to the Town for the duration of the Circus. The trial court specifically found that that was the case. This position, however, is difficult to reconcile with the School Corporation's answer to an interrogatory question posed by Yates. Yates specifically asked, "Was the [School Corporation] in control, possession and ownership of the walkway at the time of the alleged occurrence?" App. p. 94. The School Corporation responded:

> The Edinburgh Community School Corporation is and was in control of the entire property on which the circus was held. However, the path that the plaintiff took was not the natural "walkway" to exit the circus site. The "walkway" to the parking lot or to the street would have been to the southeast. The plaintiff walked around the side and behind the circus to the northwest to a steeper part of the hill.

*Id.* (emphasis added). The first sentence seems to concede that the School Corporation had possession and control of all of

School Hill, including the stairs, for premises liability purposes. The rest of the answer seems more directed to whether Yates was contributorily negligent in using the stairs, or perhaps to there being no breach of any duty to Yates. This interrogatory answer alone appears to create a genuine issue of fact as to whether the School Corporation controlled School Hill and the stairs at the time of Yates's fall.

Even without this statement there are reasons to conclude the School Corporation owed a duty to Yates. Actual physical possession of property at the precise moment an accident happens is not always dispositive on the question of "control" for premises liability purposes, if there was evidence that another party was in a better position to prevent the harm that occurred. *See Beta Steel*, 830 N.E.2d at 71; *Rhodes*, 805 N.E.2d at 386. Here, the School Corporation built and was in charge of maintaining the stairs. If the stairs were unsafe to climb or descend, because of faulty design, a lack of handrails, or lack of lighting, the School Corporation was in the best position to remedy that situation.[3] *See Beta Steel*, 830 N.E.2d at 71 (holding that although landowner had ceded direct control over electrical control room to independent contractor at time of fatal accident caused by a faulty electrical cabinet, landowner still owed duty to deceased individual because it had control over design and installation of the electrical cabinet).

The School Corporation also contends that any danger posed by the stairs was not latent but obvious, claiming that Yates was or should have been aware of the stairs' lack of side railings, the extended length of the last step, and the lack of lighting. Although not expressly making the argument on appeal, this contention is necessarily connected to the School Corporation's argument before the trial court that Yates was a licensee on the property when she fell. The nature and extent of a landowner's duty to persons coming on the property is defined by the visitor's status as an invitee, licensee, or trespasser. *Rhoades v. Heritage Inv., LLC*, 839 N.E.2d 788, 791 (Ind.Ct.App.2005), *trans. denied*. This court in the past has said that a person's status on the land is a matter left for determination by a court, not the jury. *Id.*; *but see Duffy v. Ben Dee, Inc.*, 651 N.E.2d 320, 322 (Ind.Ct.App. 1995) (holding that plaintiff's status on land as an invitee, licensee, or trespasser "is a question of fact not determinable at the summary judgment level"), *trans. denied*. Our supreme court very recently clarified that a person's status on the land may turn on factual issues that must be resolved by the trier of fact and that such issues may preclude summary judgment, in accord with our holding in *Duffy* and contrary to other cases, such as *Rhoades*. *See Kopczynski v. Barger*, 887 N.E.2d 928, 931 (Ind., 2008).

The highest duty of care is owed to an invitee; that duty being to exercise reasonable care for the invitee's protection while he or she is on the premises. *Rhoades*, 839 N.E.2d at 791. As to a licensee, the duty is to refrain from willfully or wantonly injuring him or her or acting in a manner to increase his or her peril; this includes the duty to warn a licensee of any *latent* (non-obvious) danger on the premises of which the landowner has knowledge. *Id.* Finally, the duty owed to a trespasser is the duty merely to refrain from wantonly or willfully injuring

---

3. These alleged faults would go to whether the School Corporation breached its duty; we offer no opinion on that question, but simply note that these are the faults that Yates alleges.

him or her after discovering his or her presence. *Id.*

An invitee is a person who is invited to enter or to remain on another's land. *Id.* at 792. There are three categories of invitee: the public invitee, the business visitor, and the social guest. *Id.* at 791 (citing *Burrell v. Meads,* 569 N.E.2d 637, 642 (Ind.1991)). Licensees and trespassers are persons who enter the land of another for their own convenience, curiosity, or entertainment and take the premises as they find them. *Id.* "Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowner's or occupier's permission or sufferance." *Id.* In determining whether an individual is an invitee or a licensee, the distinction between the terms "invitation" and "permission" is critical. *Id.* at 792.

It does not appear Yates could have been considered a "business visitor" of the School Corporation, because it received no economic benefit by her going to the Circus or in allowing the Town to use School Hill. Nor does it appear she was a "social guest" of the School Corporation. We focus our attention on whether she was a "public invitee." "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." *Burrell,* 569 N.E.2d at 642 (quoting Restatement (Second) of Torts § 332(2) (1965) ("Second Restatement")). We have relied upon comments to the Second Restatement of Torts to further define "public invitee":

> Where land is held open to the public, there is an invitation to the public to enter for the purpose for which it is held open. Any member of the public who enters for that purpose is an invitee....

\* \* \* \* \* \*

It is not enough, to hold land open to the public, that the public at large, or any considerable number of persons, are permitted to enter at will upon the land for their own purposes. As in other instances of invitation, there must be some inducement or encouragement to enter, some conduct indicating that the premises are provided and intended for public entry and use, and that the public will not merely be tolerated, but is expected and desired to come. When a landowner tacitly permits the boys of the town to play ball on his vacant lot they are licensees only; but if he installs playground equipment and posts a sign saying that the lot is open free to all children, there is then a public invitation, and those who enter in response to it are invitees.

*McCormick v. State, Dep't of Natural Res.,* 673 N.E.2d 829, 837 (Ind.Ct.App.1996) (quoting cmt. to § 332 of Second Restatement). The decisive factor with regard to whether the possessor had extended an "invitation" or "permission" is the interpretation that a reasonable person would put upon the possessor's words and actions given all of the surrounding circumstances. *Rhoades,* 839 N.E.2d at 792. An invitation may be either express or implied. *See Smith v. Syd's, Inc.,* 598 N.E.2d 1065, 1066 (Ind.1992). If a landowner induces a person to enter land by express or reasonably implied invitation, then the landowner leads that guest to believe that the land has been prepared for his or her safety. *Burrell,* 569 N.E.2d at 643.

It would seem clear that on a day-to-day basis, persons who choose to visit School Hill do so as licensees. Judging from the photographs in the record, School Hill ordinarily is a barren plateau, which the public is neither prohibited from using nor invited to use for any particular public purpose. This would make it similar to

the "vacant lot" described in the comments to Section 332 of the Second Restatement.

On May 10, 2005, however, a Circus was being held on School Hill with the School Corporation's blessing. Although the School Corporation itself was not putting on the Circus or benefiting from it financially, to a reasonable person it would appear that by facilitating the Circus, the School Corporation was at least impliedly inviting members of the public to come and use School Hill. A reasonable person would be led to believe that the School Corporation would not have allowed a large public event to be held on its land unless the land was prepared for his or her safety. Furthermore, Yates was at School Hill for the stated public purpose of attending the Circus and not an unrelated purpose. We conclude that by knowingly allowing a public event to be held on School Hill, those attending the Circus were the School Corporation's public invitees and their presence was not merely "tolerated," but "expected and desired."

We note that we find this case distinguishable from *Moore v. Greensburg High School*, 773 N.E.2d 367 (Ind.Ct.App.2002). There, this court held that a parent who was injured while decorating Greensburg High School for a post-prom party, with the permission of the school, was a licensee and not an invitee. *Moore*, 773 N.E.2d at 370–71. We believe there are at least two facts that differentiate this case from *Moore*. First, the injured parent in *Moore* volunteered to enter the school to help with the decorating, and the school acquiesced in that request. Second, only limited members of the public were allowed into the school for the purpose of decorating for the post-prom party. Here, Yates did not request permission to use School Hill, nor was only a limited segment of the public allowed to us it. Yates went to School Hill to visit the Circus, which was advertised and open to the general public and the School Corporation was well aware that it was open to the general public. Under these circumstances, we conclude there is at a minimum a question of fact as to whether Yates was a public invitee of the School Corporation.

Our holding is buttressed by the recent *Kopczynski* decision. There, our supreme court emphasized, "An invitation does not have to come directly from the landowner." *Kopczynski*, at 931. Rather, "the issue is whether the landowner's conduct gave the third party reason to believe that the landowner was willing to allow the third party to enter the land." *Id.* Thus, here, although the School Corporation may not have directly invited Yates onto the premises, there is at least a question of fact as to whether its conduct in allowing the Circus to be held on School Hill gave Yates reason to believe that she was an invitee. The fact that the Town issued the direct invitation for Yates to attend the Circus does not mean she was not an invitee of the School Corporation.

 Assuming Yates was an invitee, the scope of the duty the School Corporation owed her was as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Burrell,* 569 N.E.2d at 639–40 (quoting Second Restatement § 343). Even if any defect in the stairs were not latent, that would not necessarily absolve the School Corporation of liability for Yates's injury. The obviousness of any danger would not resolve the issue, because if the School Corporation were able to anticipate any potential harm, they may have been required to take some action to prevent it. *See Rhodes,* 805 N.E.2d at 388.

Our holding today is directly parallel to an older case decided by this court, one that pre-dates more recent clarifications regarding the proper terminology for premises liability cases, *Walker v. Ellis,* 126 Ind.App. 353, 129 N.E.2d 65 (1955). There, the plaintiff slipped and fell on a walkway leading from a sidewalk to a store. The land was owned by the defendant, who was leasing the property to a third party. The allegedly unsafe condition of the walkway was created by the defendant and existed at the time the lease was executed. The defendant also was aware that the lessee intended to use the property as a store to be visited by members of the general public.

 This court rejected the defendant's argument that he owed no duty to the plaintiff because he had leased out the property. After reviewing a wide range of authorities, we concluded that when premises are leased for public or semi-public purposes, and at the time the lease is executed unsafe conditions exist on the property, and the lessor knows or by the exercise of reasonable care should know of those conditions, and such conditions cause injury to a third party, the landlord is liable on the theory that the third person is on the premises at the invitation of the landlord, as well as the tenant. *Walker,* 126 Ind.App. at 371, 129 N.E.2d at 73. "If the premises are rented for a public use for which [the landlord] knows that they

are unfit and dangerous, [the landlord] is guilty of negligence, and may become responsible to persons suffering injury while rightfully using them." *Id.* at 371, 129 N.E.2d at 73 (quoting *Barrett v. Lake Ontario Beach Imp. Co.,* 174 N.Y. 310, 66 N.E. 968, 969 (1903)).

This holding comports with what we have discussed regarding control of the property in this case and the status of persons coming onto the land. Indeed, it would seem to apply with more force in a situation such as this, where the defendant allowed a third person to use the land for a public purpose for a very limited period of time. In such a case, the defendant clearly is in the best position to remedy any dangerous conditions on the property. We also observe that although *Walker* concerned a lease that financially benefited the defendant, we see no reason not to apply its holding here, where the School Corporation did not receive any payment from the Town for the use of School Hill. This is consistent with our supreme court's abandonment of the "economic benefit test" for determining whether a plaintiff was an invitee of a landowner. *See Burrell,* 569 N.E.2d at 642; *see also Rhodes,* 805 N.E.2d at 385 (holding that it was erroneous to look at contract between landowner and temporary occupier of property to determine duty owed to third party injured on the property).

The trial court erred in concluding that the School Corporation owed no duty to Yates. It did owe a duty to her, specifically with respect to the injuring instrumentality in this case, the stairs. Moreover, there is a question of fact as to whether Yates was at School Hill at the School Corporation's express or implied invitation. Thus, the alleged obviousness of any defects in the stairs does not automatically absolve the School Corporation of liability for Yates's injuries.

## II. Contributory Negligence

■ The School Corporation also claims that even if it owed a duty to Yates, she was contributorily negligent. As a governmental entity, the School Corporation is exempt from the provisions of the Comparative Fault Act. *See Funston v. School Town of Munster*, 849 N.E.2d 595, 598 (Ind.2006). Thus, the common law rule of contributory negligence is applicable in this case. *See id.* Any negligence on Yates's part in causing her fall, no matter how slight, will completely bar any action for damages against the School Corporation. *See id.*

■ A plaintiff is contributorily negligent if the plaintiff's conduct falls below the standard to which he or she should conform for his or her own protection and safety. *Id.* Contributory negligence exists if the plaintiff fails to exercise a degree of care and caution that an ordinary, reasonable, and prudent person would exercise in a similar situation. *Id.* at 598–99. Contributory negligence is generally a question of fact that is not an appropriate matter for summary judgment if there are conflicting factual inferences to be drawn from the designated evidence. *Id.* at 599. " 'However, where the facts are undisputed and only a single inference can reasonably be drawn therefrom, the question of contributory negligence becomes one of law.' " *Id.* (quoting *Jones v. Gleim*, 468 N.E.2d 205, 207 (Ind.1984)).

In *Funston*, there was a clear-cut, undisputed fact that led the court to find the plaintiff was contributorily negligent as a matter of law. Specifically, while watching a basketball game in a gym from the top row of bleachers the plaintiff leaned back without first ascertaining whether there was anything on which to lean back, causing the plaintiff to fall backwards off the bleachers. *See id.* at 600. There is no such evidence or clear-cut fact here.

■ The School Corporation essentially is arguing that Yates was aware of potential troubles with the stairs, including the extended last step, the lack of side rails, and poor lighting, and she was contributorily negligent in deciding to use the steps anyway while carrying a three-year-old. Yates stated in an affidavit, however, that she was unaware of any safer way to descend School Hill. We conclude that the question of contributory negligence in this case is one of fact, not law. Whether it was reasonable for Yates to use the stairs near where she parked her car, rather than attempting to descend the embankment, is a factual determination to be made. We also believe it is a question of fact as to whether it was reasonable for Yates to carry her grandson rather than to allow him to descend either the steps or the embankment.

The School Corporation also seems to suggest that Yates should have parked her car elsewhere, closer to where the main entrance to the Circus was and where the earthen embankment leading to the top of School Hill allegedly was less steep. Still, we believe it is for a fact-finder to decide whether Yates acted unreasonably in using stairs to descend School Hill. It may have been reasonable for Yates to conclude that stairs of any kind would be less dangerous and preferable to alternative means of ingress and egress that lacked stairs. In short, although Yates may have been aware of some potential dangers associated with the stairs, she was not per se negligent in using them. The School Corporation is not entitled to summary judgment on its contributory negligence claim.

### Conclusion

The trial court erred in concluding that the School Corporation owed no duty to Yates. Furthermore, Yates was not contributorily negligent as a matter of law.

We reverse the grant of summary judgment in favor of the School Corporation.

Reversed.

CRONE, J., and BRADFORD, J., concur.