**Mary McCRANEY, Appellant–Plaintiff,**

v.

**Steven GIBSON, Bradley J. Calow and Natalie Calow, Appellees– Defendants.**

**No. 49A05–1009–CT–528.**

Court of Appeals of Indiana.

July 26, 2011.

Larry A. Minnix, Brattain & Minnix, John B. Steinhart, Indianapolis, IN, Attorneys for Appellant.

Larry A. Yeager, State Farm Litigation Counsel, Indianapolis, IN, Attorney for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Mary McCraney (McCraney), appeals the trial court's Order granting summary judgment in favor of Appellees–Defendants, Stephen Gibson (Gibson)[1] and Bradley (Brad) and Natalie Calow (collectively, the Calows), with respect to McCraney's negligence claim resulting in personal injuries.

We affirm.

### ISSUE

McCraney raises one issue for our review, which we restate as the following: Whether the trial court erred when it entered summary judgment in favor of the Calows.

### FACTS AND PROCEDURAL HISTORY

The Calows own rental property (Property) located at 84 North Dearborn Street,

---

1. Gibson is not a party to this appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court is a party on appeal.

Indianapolis, Indiana. The Calows lived in a house next door to the Property. After purchasing the Property in December 2005, the Calows made a number of cosmetic improvements to the Property. The Property's backyard was fenced-in and the only access from the backyard to the alley, or from the alley to the backyard, was through a gate. The gate was chained at the bottom and the top so that there were no gaps between the gate and the fence. The Calows had planned on replacing the fence and gate with a six-foot tall wood privacy fence and had the materials for the fence stored in the garage, but had not done so by the time of the incident.

On June 6, 2008, the Calows entered into a lease agreement with Gibson, which provided that Gibson was entitled to have one pet on the Property. The Calows were aware that Gibson had a one-half bullmastiff and one-half boxer dog named Ceasar that would be living at the Property. Prior to signing the lease, Gibson inspected the Property and did not find any problems with the fence or gate. Brad informed Gibson that the best way to close the gate was to chain both the top and bottom of the gate. At some point after Gibson signed the lease, he informed the Calows that the gate was inadequate to restrain Ceasar. Gibson was unaware, though, that Ceasar had been escaping from the backyard.

On July 20, 2006, McCraney was injured when Ceasar knocked her down in the adjacent alley after escaping the Property through the gate in the backyard. As a result of the incident, McCraney was transported to Wishard Hospital, where a CT scan revealed a right subdural hematoma and a hemorrhagic contusion in the right frontal lobe. Soon after, Officer Willard D. Cast (Officer Cast), a patrol officer for Indianapolis animal control, responded to a report to investigate the incident involving McCraney. Upon arriving at the scene, Officer Cast made contact with an Indianapolis Metropolitan Police Department officer and Gibson. Officer Cast was informed by the officer that Steve Griffith had witnessed Ceasar knock McCraney down.

On May 16, 2008, McCraney filed a complaint for damages and request for a jury trial against the Calows and Gibson. On May 27, 2008, the Calows filed a motion for enlargement of time. On March 16, 2009, the Calows filed a *praecipe* for trial. On September 30, 2009, the Calows filed a motion for summary judgment, arguing that they did not owe a duty to McCraney because they did not have control over the Property. On April 15, 2010, McCraney filed a memorandum of law in opposition to the Calow's motion for summary judgment. Then, on May 28, 2010, McCraney filed an enumeration of special damages claiming actual damages of $40,000 in medical expenses incurred.

On August 10, 2010, the trial court held a hearing on the Calows' motion for summary judgment, which was granted on August 12, 2010.[2] The trial court made the following findings of fact and conclusions of law, in relevant part:

9. The back yard of the premises was fenced-in, with the only access from the back yard to the alley, or from the alley to the back yard, being through a gate. [ ]

10. Prior to signing the lease, Gibson inspected the premises and did not find any problems with the fence or gate. [ ]

2. The original Order granting Calow's motion for summary judgment was entered on August 12, 2010; however, that Order was amended on November 23, 2010, to show the trial court's intention that it is a final, appealable order, with no other amendment of substance being made.

11. At some point between inspecting the property and July 20, 2006, the date of the incident, Gibson told Brad that the gate was not adequate to contain Ceasar. [ ]

    \*      \*      \*

13. When Gibson moved in to the house, Brad was intending to replace the fence and gate but had not done so as of July 20, 2006. [ ] The gate was chained at the top and the bottom so that there were no gaps. [ ]

14. The only time Brad was aware that Ceasar had gotten out of the fenced-in premises was the day of the incident at issue in this case. [ ]

15. From the date Gibson moved in until after the incident on July 20, 2006, Gibson was not aware that Ceasar was escaping the fenced-in area, and Gibson had not told [the] Calows that Ceasar was escaping. [ ]

16. There is no evidence that the Calows or Gibson had actual knowledge of Ceasar's dangerous propensities prior to the incident at issue in this case. [ ]

(Appellant's App. p. 10).

McCraney now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

This cause comes before this court as an appeal from a grant of summary judgment. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct.App.2008).

Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607–08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was proper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negates at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.* We review a summary judgment order *de novo. Tri–Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1001 (Ind.2009).

### II. *Negligence*

■ McCraney argues that the trial court erred when it granted summary judgment in favor of the Calows. Specifically, she argues that "the Calows' negligent maintenance of the [Property] was a direct and foreseeable cause of her injuries, therefore, a jury should decide the Calows' liability for those injuries." (Appellant's Br. p. 5).

We have stated that in order to prevail against a landowner for the acts of a tenant's dog, the plaintiff must "demonstrate both that the landowner[ ] 'retained control over the property' and 'had actual knowledge that the [dog] had dangerous propensities.'" *Morehead v. Deitrich*, 932 N.E.2d 1272, 1276 (Ind.Ct.App.2010), *trans. denied* (internal citations omitted). The absence of either component will result in a finding for the landowner. *Id.*

However, McCraney argues that her case is not a "dog bite" case because no bite actually occurred. Furthermore, she argues that control over the property and actual knowledge of the dog's dangerous propensities are "mere enunciations of the required elements of negligence." (Appellant's Br. p. 9). Instead, she argues that the Calows negligently maintained the gate and fence, and as such, urges us to apply the theory of premises liability, or in the alternative, assumed liability.

To recover under a theory of premises liability sounding in negligence, the plaintiff must prove three elements: (1) a duty owed to the plaintiff, (2) a breach of that duty by the defendant, and (3) the breach proximately caused the plaintiff's damages. *Rider v. McCamment*, 938 N.E.2d 262, 266 (Ind.Ct.App.2010). A defendant is entitled to summary judgment by demonstrating that the undisputed material facts negate at least one of the elements of the plaintiffs claim. *Id.*

"The question of whether a duty is owed in premises liability cases depends primarily upon whether the defendant was in control of the premises when the accident occurred." *Yates v. Johnson County Bd. of Comm'rs*, 888 N.E.2d 842, 847 (Ind. Ct.App.2008). This rule is intended " 'to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm.' " *Beta Steel v. Rust*, 830 N.E.2d 62, 70 (Ind.Ct.App.2005) (quoting *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind.2004)). "Although whether a duty exists usually is a question of law, the existence of a duty sometimes depends upon underlying facts that require resolution by the trier of fact, and this may include questions regarding who controlled property at the time and place of an accident." *Yates*, 888 N.E.2d at 847. "Possession and control of property for premises liability purposes generally is a question of fact involving occupation and intent to control the particular area where an injury occurred." *Id.* (quoting *Beta Steel*, 830 N.E.2d at 70). "Actual physical possession of property at the precise moment an accident happens is not always dispositive on the question of control for premises liability purposes, if there was evidence that another party was in a better position to prevent the harm that occurred." *Id.* at 848.

Recently, in *Morehead v. Deitrich*, 932 N.E.2d 1272 (Ind.Ct.App.2010), *trans. denied*, we discussed this very issue of whether a landowner owed a duty to protect a third party from his tenants' dog on the rental property under premises liability theory. In that case, Deitrich rented property to Steve Sanders (Sanders) and Angel Todd (Todd), who had a pit bull and "assured [Deitrich] it was a well-behaved dog." *Id.* at 1274. At one point, however, Sanders warned Deitrich that "the dog was very hostile to strangers, and that the dog had been trained to dislike people who wore a uniform, and non-white people." *Id.* One day as Morehead, a postal carrier, was delivering mail, she was bit by Sanders' and Todd's dog. *Id.* Morehead filed a complaint against Deitrich, claiming that Deitrich retained control of the property. *Id.* The trial court granted summary judgment in favor of Deitrich, and Morehead appealed. *Id.* at 1275. On appeal, Morehead argued that Deitrich's knowledge of the dog's violent propensities made the case an "exception to the general rule that possession and control of the premise[s] at the time of harm determines a landlord's liability." *Id.* at 1277. Therefore, Morehead asked this court to determine whether Deitrich had a duty to prevent a dangerous condition on the property under the theory of premise liability. *Id.* Morehead argued that based on the fact that Sanders

told Deitrich that the dog was "hostile to strangers," it was foreseeable that if the dog somehow escaped, it would have injured someone. *Id.* at 1279.

With respect to the first issue in *Morehead,* we held that as a matter of law, Deitrich did not owe Morehead a duty, because "[i]f an animal is allowed by its keeper to escape from its confinement and harm results, that damage results from the negligent confinement, not from the condition of the land." *Id.* (citing *Blake v. Dunn Farms, Inc.,* 274 Ind. 560, 413 N.E.2d 560, 563 (1980)). Furthermore, a "faulty or dangerous condition" of the property did not cause Morehead's injury.[3] *Id.* Instead, it was the tenants' failure to properly confine their dog. *Id.* at 1279. As to Morehead's foreseeability argument, we held that it was not "reasonably foreseeable that [the] dog indeed [would] escape its confinement. It [was] not the dog's mere presence on the leased property that cause[d] harm. Rather it [was] the owner's failure to adequately confine that dog." *Id.* at 1280.

McCraney urges us not to apply the two-prong test or follow the reasoning in *Morehead,* as she describes *Morehead* and cases that apply the two-prong test as being factually different from the present case. Specifically, she maintains that in *Morehead,* there was no "actual property defect" and that "the landowner was not given notice of a defect, nor did he give the tenants the impression he would be repairing a known defect." (Appellant's Reply Br. p. 4).

We disagree and choose to apply the two-prong test, which finds that the duty of reasonable care imposed upon a landowner is measured by the landowner's control or possession of the property *and* the

landowner's knowledge of the dangerous propensities of the dog. Here, there is no evidence in the record that the Calows knew about Ceasar's violent propensity. In fact, during the summary judgment hearing, McCraney conceded that there was no evidence of such knowledge: "If you're going to analyze this case in terms of dangerous propensities, we're not going to win the case because I'm willing to stipulate on the record that, that we have not been able to establish that even the owner of the dog had any opinion about dangerous propensities." (Transcript p. 9). Because the Calows need only prove one prong of the test, we find that they were entitled to summary judgment as a matter of law.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly entered summary judgment in favor of the Calows.

Affirmed.

DARDEN, J., and BARNES, J., concur.

---

**3.** We defined a "dangerous condition" as a "property defect creating substantial risk of injury when the property is used in a reasonably foreseeable manner." *Id.* at 1278 (citing BLACK'S LAW DICTIONARY 314 8th Ed.2004).