FILED

Jun 16 2023, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Lane C. Siesky
Daniel B. Gearhart
Douglas K. Briody
Siesky Law Firm, PC
Evansville, Indiana

ATTORNEY FOR APPELLEE

Max E. Fiester
Terrell, Born, Sullivan & Fiester
LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Buehler,<br>*Appellant-Plaintiff*<br><br>v.<br><br>Martin Bocanegra III and Julie Bocanegra,<br>*Appellee-Defendants.* | June 16, 2023<br><br>Court of Appeals Case No.<br>22A-CT-2568<br><br>Appeal from the Vanderburgh Circuit Court<br><br>The Honorable David D. Kiely, Judge<br><br>Trial Court Cause No.<br>82C01-2103-CT-1400 |

**Opinion by Judge Pyle**

Chief Judge Altice and Judge Riley concur.

**Pyle, Judge.**

## Statement of the Case

In this dog bite case, Michael Buehler ("Buehler"), a mail carrier with the United States Postal Service, appeals the trial court's order that granted summary judgment in favor of landlords Martin Bocanegra III ("Martin") and his wife, Julie ("Julie"), (collectively, "the Bocanegras"). Buehler argues that the trial court erred in granting the Bocanegras' summary judgment motion. Concluding that the trial court did not err in granting the Bocanegras' summary judgment motion, we affirm the trial court's judgment.

We affirm.

## Issue

> Whether the trial court erred in granting the Bocanegras'
> summary judgment motion.

## Facts

In 2019, the Bocanegras purchased a duplex ('the Duplex") on Linwood Avenue in Evansville from Richard and Vicki Smith ("the Smiths"). At the time of the purchase, Rhonda Sapp ("Sapp") had a written month-to-month lease with the Smiths. The Bocanegras agreed to honor Sapp's lease, which permitted Sapp to keep "one small dog." (App. Vol. 2 at 53). Julie saw Sapp's elderly eight to twelve-pound terrier during a walk-through of the Duplex before purchasing it.

[4] Sapp still lived in the Duplex in September 2020. On September 11, 2020, Buehler had just placed mail in Sapp's mailbox when Sapp opened the front door. At that moment, a bully breed dog named Ford ("Ford") rushed out the door and knocked Buehler down.[1] Buehler punched Ford in the face and attempted to scoot away from Ford. However, Ford bit Buehler on his arm before Sapp was able to restrain Ford ("the dog bite incident").

[5] In March 2021, Buehler filed a complaint against Sapp and the Bocanegras. Regarding the Bocanegras, the complaint alleged that the Bocanegras were strictly liable to Buehler pursuant to INDIANA CODE § 15-20-1-3, the dog bite statute ("the Dog Bite Statute"). The complaint further alleged that the Bocanegras were negligent because they had breached their duty of reasonable care to Buehler.

[6] In October 2021, the Bocanegras filed a motion for summary judgment. In support of their motion, the Bocanegras designated Julie's affidavit wherein she stated that the Bocanegras had been aware that Sapp had owned a small terrier when they had purchased the Duplex. However, according to Julie's affidavit, she had not known that the terrier had died before September 11, 2020. Julie further stated in the affidavit that the Bocanegras had not known that Sapp had been permitting Ford, who belonged to Sapp's friend, to stay at the Duplex. In

---

[1] The parties frequently refer to Ford as a pit bull. However, in her deposition, Sapp stated that Ford was not a pit bull. Rather, according to Sapp, Ford was a "short [and] stout . . . bully" and was "totally different from a pit bull." (App. Vol. 3 at 11, 12).

addition, Julie specifically stated that neither she nor Martin had ever observed Ford at the Duplex.

[7] In their brief in support of their summary judgment motion, the Bocanegras argued that the Dog Bite Statute did not apply to them because they were not Ford's owners. They further argued that they had not retained control of the Duplex and that because they had not known that Ford was staying at the Duplex, they "had no actual knowledge of any dangerous propensity on the part of [Ford]." (App. Vol. 2 at 38). In addition, the Bocanegras stated that it was "worth noting this *actual knowledge* element [wa]s not even alleged in [Buehler]'s Complaint, but actual knowledge [wa]s in fact required." (App. Vol. 2 at 38) (emphasis in the original).

[8] In August 2022, Buehler filed a response in opposition to the Bocanegras' summary judgment motion. In support of his response, Buehler designated several depositions. One of the designated depositions was Sapp's. In that deposition, Sapp stated that Ford had belonged to a friend and that Ford had been staying at the Duplex for two to four weeks before the dog bite incident. Also in her deposition, Sapp stated that she had taken Ford for a walk around the block at least three times a day and that Ford had a loud bark. In addition, Sapp stated in her deposition that the dog bite incident was a "freak accident" because Ford had "never . . . bitten no one[.]" (App. Vol. 3 at 22, 25). When asked if she thought Ford was dangerous, Sapp responded that Ford "didn't have a dangerous bone in his body[.]" (App. Vol. 3 at 35). Ford and his owner had both passed away at the time of Sapp's deposition. None of Buehler's

additional designated evidence included information about whether Ford had a dangerous propensity.

[9] In his response to the Bocanegras' summary judgment motion, Buehler argued that the Dog Bite Statute applied to the Bocanegras because they met the statutory definition of owners. Buehler also argued that the trial court should deny the Bocanegras' summary judgment motion because there was a genuine issue of material fact regarding whether the Bocanegras knew that Ford was staying with Sapp in the Duplex.

[10] Two weeks later, the Bocanegras filed a reply brief wherein they stated that it was crucial to note that Buehler's response to their summary judgment motion had not included "[a]ny law regarding dog bites and lawsuits brought against landlords." (App. Vol. 3 at 107). The Bocanegras listed the dog bite cases that they had cited in their brief in support of their summary judgment motion and to which Buehler had failed to respond. The Bocanegras reiterated that the Dog Bite Statute did not apply to them because they were not Ford's owners and argued that Buehler's designated evidence had failed to establish a genuine issue of material fact regarding the Bocanegras' actual knowledge of Ford's dangerous propensity.

[11] The trial court held a summary judgment hearing in September 2022. Immediately following the hearing, the trial court issued an order granting the Bocanegras' summary judgment motion. The trial court's order specifically states that the trial court had considered the pleadings and designated materials,

had found no genuine issue as to any material fact, and had concluded that the Bocanegras were entitled to judgment as a matter of law. The trial court further found that there was no just reason for delay and expressly directed entry of a final judgment in favor of the Bocanegras.

Buehler now appeals.

## Decision

Buehler argues that the trial court erred in granting the Bocanegras' summary judgment motion. When reviewing the grant of a summary judgment motion, our well-settled standard of review is the same as it is for the trial court. *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). Specifically, we must determine whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Id*. The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id*. Once the moving party has met these two requirements, the burden shifts to the non-moving party to demonstrate a genuine issue of material fact by setting forth specifically designated facts. *Id*. In deciding whether summary judgment is proper, we consider only the evidence the parties specifically designated to the trial court. Ind. Trial Rule 56(C), (H). We construe all factual inferences in favor of the nonmoving party and resolve all doubts regarding the existence of a material issue against the moving party. *Carson v. Palombo*, 18 N.E.3d 1036, 1041 (Ind.

Ct. App. 2014). "Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law." *Goodwin*, 62 N.E.3d at 386.

[14] Buehler first argues that the trial court erred in granting the Bocanegras' summary judgment motion because they were strictly liable to him pursuant to the Dog Bite Statute. The Bocanegras respond that the Dog Bite Statute "is inapplicable to [them] because they were not [Ford's] owners[.]" (The Bocanegras' Br. 8). We agree with the Bocanegras.

[15] INDIANA CODE § 15-20-1-3 provides, in relevant part, as follows:

> (a)     If a dog, without provocation, bites a person:
>
> > (1)     who is acting peaceably; and
> >
> > (2)     who is in a location where the person may be required to be in order to discharge a duty imposed upon the person by:
> >
> > > *     *     *
> > >
> > > (C)     the postal regulations of the United States;
> >
> > the owner of the dog is liable for all damages suffered by the person bitten.
>
> (b)     The owner of a dog described in subsection (a) is liable for the damages even if:
>
> > (1)     the dog has not previously behaved in a vicious manner; or

> > (2) the owner has no knowledge of prior vicious behavior by the dog.

"Our supreme court has recognized that in enacting the Dog Bite Statute, the legislature 'clearly intended to change the common law and did so by explicitly removing the common law presumption that a dog is harmless unless it acts otherwise' and that 'the effect of this statute is to render dog owners strictly liable if their dogs bite the described public servants without provocation.'" *Fields v. Gaw*, ---N.E.3d---, 2023 WL 2944945 (Ind. Ct. App. April 14, 2023) at *3 (quoting *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273, 275 (Ind. 2003)). The supreme court further explained that "the statute reflects a policy choice that the dog's owner and keeper should bear the loss rather than the injured public employee." *Cook*, 796 N.E.2d at 276. "Thus, under the [Dog Bite] Statute, a bitten postal worker has only to prove the identity of the dog's owner and that the dog bit without provocation." *Fields*, 2023 WL 2944945 at *3. The Dog Bite Statute defines owner as "the owner of a dog." I.C. § 15-20-1-2. The term owner "includes a person who possesses, keeps, or harbors a dog." *Id*.

[16] Buehler argues that because the Bocanegras assumed a lease that allowed Sapp to have a small dog, the Bocanegras "meet the [statutory] definition of an 'owner' of the dog[.]" (Buehler's Br. 20). We recently addressed a similar argument in the *Fields* case and "reject[ed] [mail carrier] Fields' contention that, as a matter of law, the mere existence of the landlord/tenant relationship brought [landlord] Gaw within the definition of an 'owner' for purposes of the Dog Bite Statute." *Fields*, 2023 WL 2944945 at *4. We noted that there was no

factual dispute that landlord Gaw had provided housing to two tenants through a rental agreement and had allowed the tenants to keep up to two dogs. *Id.* However, we observed that mail carrier Fields had designated no evidence creating a factual issue that landlord Gaw had any interaction or contact with the tenants' dogs, let alone that the landlord had personally afforded the tenants' dogs lodging, shelter, or refuge. We, therefore, "h[e]ld that no genuine issue of material fact exist[ed] precluding summary judgment as to whether [landlord] Gaw was an 'owner' of the dogs at issue pursuant to the Dog Bite Statute[,]" and affirmed the trial court's grant of summary judgment in favor of landlord Gaw. *Id.*

[17] Here, as in *Fields*, there is no factual dispute that the Bocanegras provided housing to Sapp through a rental agreement that allowed Sapp to keep one small dog. However, Buehler has designated no evidence creating a factual issue that the Bocanegras had any interaction or contact with this small dog, let alone that the Bocanegras had personally afforded Sapp's small dog lodging, shelter, or refuge. Indeed, we note that the small dog allowed in Sapp's lease was not even the dog that knocked Buehler to the ground and bit Buehler. We, therefore, hold that no genuine issue of material fact exists precluding summary judgment as to whether the Bocanegras were Ford's owners pursuant to the Dog Bite Statute. *See id.* Accordingly, the trial court did not err in granting the Bocanegras' summary judgment motion on this issue.

[18] Buehler further argues that the trial court erred in granting the Bocanegras' summary judgment motion because "there is a genuine issue of material fact as

to whether the Bocanegras knew or exercised reasonable care to discover [that Ford] was residing in the Duplex[.]" (Buehler's Br. 23). The Bocanegras respond that Buehler "avoids the applicable law regarding [the] liability of landlords who are sued arising out of a dog bite at the leased premises." (The Bocanegras' Br. 8). Again, we agree with the Bocanegras.

[19] "To prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Goodwin*, 62 N.E.3d at 386 (cleaned up). Issues of duty are generally questions of law for the court to decide. *Olds v. Noel*, 857 N.E.2d 1041, 1043 (Ind. Ct. App. 2006). "Summary judgment in a negligence case is particularly appropriate when the court determines that no duty exists because, absent a duty, there can be no breach and, therefore, no negligence." *Id*. (cleaned up).

[20] Further, it is well-settled that, in a dog bite case, the duty of reasonable care imposed upon a landowner who did not own the dog is measured by the landowner's control over the property and the landowner's actual knowledge that the dog had dangerous propensities. *McCraney v. Gibson*, 952 N.E.2d 284, 287 (Ind. Ct. App. 2011), *trans. denied*. *See also Baker v. Weather ex rel. Weather*, 714 N.E.2d 740, 741 (Ind. Ct. App. 1999). The absence of either component will result in a finding for the landowner. *Morehead v. Deitrich*, 932 N.E.2d 1272, 1276 (Ind. Ct. App. 2010), *trans. denied*.

[21] This Court has defined dangerous propensity as "a propensity or tendency of an animal to do any act which might endanger the safety of person or property in a given situation." *Royer v. Pryor*, 427 N.E.2d 1112, 1117 (Ind. Ct. App. 1981) (cleaned up). "It is the act of the animal and not in the state of mind of the animal from which the effects of a dangerous propensity must be determined." *Id*.

[22] Here, the Bocanegras, through their designated evidence, made a prima facie showing that they had no actual knowledge that Ford was a dog with dangerous propensities. In fact, the Bocanegras designated evidence that they had no knowledge that Ford was staying with Sapp at the Duplex. It was, therefore, incumbent upon Buehler to come forward with designated evidence establishing a genuine issue of material fact concerning the Bocanegras' actual knowledge of Ford's dangerous propensities. Buehler failed to do so. Indeed, Buehler's only designated evidence concerning Ford's disposition and dangerous propensities was Sapp's deposition testimony that Ford had never bitten anyone and that he did not have a dangerous bone in his body. Because the material facts do not establish the second part of the two-part test for determining a landlord's liability for the acts of the tenant's dog, the Bocanegras were entitled to summary judgment.[2] *See McCraney*, 952 N.E.2d at 289 (affirming summary judgment for the landlord where there was no evidence in

---

[2] Because the Bocanegras only needed to prove one part of the test, we need not address the first part of the test regarding whether the Bocanegras retained control over the property. *See Morehead*, 932 N.E.2d at 1276.

the record of the landlord's actual knowledge of the dog's violent propensity).

Accordingly, the trial court did not err in granting the Bocanegras' summary

judgment motion.

[23]     Affirmed.


Altice, C.J., and Riley, J., concur.