FILED

Oct 23 2023, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Thomas A. Manges
Manges Law Firm
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Lucy R. Dollens
Quarles & Brady LLP
Indianapolis, Indiana

Kathleen K. Curtis
Nilan Johnson Lewis
Minneapolis, MN

# IN THE
# COURT OF APPEALS OF INDIANA

Richard Dolsen, Jr.,

*Appellant-Plaintiff,*

v.

VeoRide, Inc.,

*Appellee-Defendant*

October 23, 2023

Court of Appeals Case No.
23A-CT-945

Appeal from the Allen Superior Court

The Honorable Jennifer L. DeGroote, Judge

Trial Court Cause No.
02D03-2203-CT-103

**Opinion by Judge Crone**
Judges Brown and Felix concur.

**Crone, Judge.**

## Case Summary

Fort Wayne Fire Department Captain Richard Dolsen, Jr., was injured while responding to a fire in a building leased by VeoRide, Inc. Dolsen sued VeoRide for negligence. VeoRide moved for summary judgment on the basis that Dolsen's claims were barred by Indiana's firefighter's rule,[1] and the trial court granted that motion. On appeal, Dolsen argues that the trial court erred. We agree, so we reverse and remand for further proceedings.

## Facts and Procedural History

VeoRide "is a company that rents electric scooters and electric bicycles that are powered by lithium batteries." Appellant's App. Vol. 2 at 59. In 2019, VeoRide expressed interest in leasing a building in Fort Wayne from Sweet Real Estate–City Center, LLC (Sweet). At that time, the building had no electricity or light fixtures, and the only window was on the second floor, which was "sectioned off" from the ground floor. *Id*. at 152. During a walk-through of the building, VeoRide regional general manager Benjamin Thomas and Sweet real estate broker Tiffany Fries had to use "big flashlights" to be able to see. *Id*. at 150. Thomas asked Sweet to install electricity, light fixtures, and "outlets to charge batteries[,]" which was done after VeoRide and Sweet entered into a commercial lease agreement in August 2019. *Id*. at 153. VeoRide used the

---

[1] The rule has previously been referred to as the "fireman's rule."

building "to store scooters, scooter parts, batteries, battery racks, and battery recharging equipment." *Id.* at 61.

[3] On June 11, 2020, one of the batteries ignited and started a fire in the building. No VeoRide employees were on the premises at that time. Around 6:00 p.m., Fries received a call from her company's security chief about the fire, and she started driving toward the building. Fries called the fire department and VeoRide manager Eric Xayarath, who had already been notified about the fire[2] and also was en route to the building. Xayarath called Thomas and said that "there was a fire" and "the firefighters had been called[.]" *Id.* at 185. Xayarath said "that he would keep [Thomas] posted on kind of next steps what was going to go on." *Id.*

[4] Around 6:38 p.m., Dolsen's unit was dispatched to the fire. Dolsen had never been inside the building. He was "equipped with a radio, so any warning sent by [Sweet] or [VeoRide] could quickly and easily have been conveyed to [him]." *Id.* at 112. On "many occasions in [his] career, [he had] responded to other fires where an owner or tenant at a commercial building [had] warned [fire department personnel] about potential dangers inside, including holes in a floor." *Id.*

---

[2] Fries's deposition suggests that the fire department notified Xayarath about the fire. Appellant's App. Vol. 2 at 171.

Dolsen entered the building through a door, "at which point [he] could not see due to lack of light and smoke." *Id*. at 112.[3] He "moved around the perimeter of the inside of the building … to look for a ventilation opening and electrical breaker box by touching and pressing the inside wall to guide [him]." *Id*. Just after he passed a closed door "at the southeast corner of the building, [he] extended [his] left arm to press the wall, as [he] had been doing, but contacted nothing but air, and fell through an opening in the wall down into what [he] later realized was a stairwell." *Id*. The wall was composed of bare wooden studs, with a gap left by a missing stud. Dolsen "could not see the opening in the wall due to the lack of light and the presence of smoke." *Id*. Dolsen "fell to the bottom of the stairwell" and was injured. *Id*. Fries and Xayarath arrived at the building after the fire was extinguished.

In March 2022, Dolsen filed a complaint against VeoRide and Sweet, which alleged in pertinent part that the fire was caused by "mishandling of the batteries[,]" that he should have been warned about the opening in the wall, and that "[t]he fault of the Defendants was responsible for causing damages to" him. *Id*. at 34. VeoRide filed a motion for summary judgment asserting that Dolsen's claims were barred by Indiana's firefighter's rule. In support of its motion, VeoRide designated evidence establishing that its "employees walked around and in the area of the absent stud … on a day-to-day basis without any

---

[3] VeoRide asserts that "it was only dark in the Building because the lights were inoperable as a result of the fire." Appellee's Br. at 9 (citing Appellant's App. Vol. 2 at 127, 153, 168). The cited pages do not support this assertion. The record before us is silent regarding the actual cause of the power outage.

injuries occurring[,]" that no employee had "ever fallen through the location of the absent stud[,]" and that the wall "was in the same condition on the day of the fire as it was on the day VeoRide began occupying the Building on September 1, 2019." *Id*. at 41. Sweet filed a motion asserting that it was entitled to summary judgment because "it had given full possession and control of the Building to VeoRide." Appealed Order at 2. In March 2023, the trial court issued an order granting both summary judgment motions, finding that Dolsen's claims were "conclusively barred" by Indiana's firefighter's rule. *Id*. at 18. Dolsen now appeals that order only as to VeoRide.

## Discussion and Decision

[7] In reviewing a summary judgment ruling, "we apply the same test as the trial court: summary judgment is appropriate only if the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Erie Ins. Exch. v. Myron Corp.*, 212 N.E.3d 174, 178 (Ind. Ct. App. 2023) (citing, inter alia, Ind. Trial Rule 56(C)). "The moving party bears the initial burden of showing the absence of any genuine issue of material fact as to a determinative issue." *Id*. "Our review is limited to those facts designated to the trial court, and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party." *Id*. (citing, inter alia, Ind. Trial Rule 56(H)). Although "federal practice permits the moving party to merely show that the party carrying the burden of proof *lacks* evidence on a necessary element, we impose a more onerous burden: to affirmatively 'negate an opponent's claim.'" *Hughley v. State*, 15 N.E.3d 1000,

1003 (Ind. 2014) (quoting *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994)). "Because we review a summary judgment ruling de novo, a trial court's findings and conclusions offer insight into the rationale for the court's judgment and facilitate appellate review but are not binding on this court." *Erie Ins.*, 212 N.E.3d at 178 (italics omitted).

[8] Dolsen's claims against VeoRide sound in negligence. "To prevail on a claim of negligence, a plaintiff must demonstrate three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) compensable injuries proximately caused by the breach." *Shiel Sexton Co. v. Towe*, 154 N.E.3d 827, 832 (Ind. Ct. App. 2020). Whether a duty exists is usually a question of law, but sometimes the existence of a duty depends upon underlying facts that require resolution by the trier of fact. *Yates v. Johnson Cnty. Bd. of Comm'rs*, 888 N.E.2d 842, 847 (Ind. Ct. App. 2008). "Summary judgment is rarely appropriate in negligence actions because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person." *Severance v. New Castle Cmty. Sch. Corp.*, 75 N.E.3d 541, 546 (Ind. Ct. App. 2017), *trans. denied*. "This standard is best applied by a jury after hearing all of the evidence." *Id*. "To prevail on a motion for summary judgment in a negligence action, the defendant must demonstrate that the undisputed material facts negate at least one of the elements essential to plaintiff's claim or that the claim is barred by an affirmative defense." *Id*.

[9] In its relatively recent restatement of Indiana's firefighter's rule, which was originally established in 1893, the Indiana Supreme Court explained that the

rule "allows no claim by a professional emergency responder for the negligence that creates the emergency to which he or she responds." *Babes Showclub, Jaba, Inc. v. Lair*, 918 N.E.2d 308, 313-14 (Ind. 2009). Thus, Dolsen has no claim for VeoRide's allegedly negligent handling of the scooter batteries, which allegedly started the fire to which he responded.

[10] That said, pursuant to *Babes Showclub*, an "emergency responder remains free to sue for damages if an injury is caused by negligent or intentional tortious conduct separate and apart from the conduct that contributed to the emergency." *Id.* at 314. "The negligent conduct need not occur after the officer arrives on the scene, but must be separate from and independent of the negligence that caused the situation necessitating the officer's presence. Such a claim will be subject to the provisions of Indiana's Comparative Fault Act." *Id.*

[11] Here, Dolsen alleged that VeoRide was also negligent in failing to warn him of the danger posed by the gap in the wall next to the stairwell, which he was unable to see "due to the lack of light and the presence of smoke." Appellant's App. Vol. 2 at 112. Clearly, this allegedly negligent conduct is separate from and independent of the negligence that caused the situation necessitating Dolsen's presence in VeoRide's building. "Under Indiana law, the status of a person when he or she is injured on the premises of another determines the duty owed to that person by the owner of the property." *Henderson v. Reid Hosp. Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied* (2015). A firefighter is a licensee and therefore "is owed only 'the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril'

and 'to warn the licensee of any latent [non-obvious] danger' of which the landowner [or possessor] is aware." *Babes Showclub*, 918 N.E.2d at 310 & n.2 (quoting *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991)).

[12] In its order, the trial court noted that

> VeoRide employees routinely walked by the Wall and Stairwell without incurring any injuries. For this reason, it is likely that Defendants did not warn Dolsen of the Wall and Stairway because Defendants simply did not anticipate them presenting any danger to Dolsen; in a normal situation they likely would not have presented any danger to Dolsen.

Appealed Order at 17. But the designated evidence indicates that when Dolsen responded to the fire, the building was dark and filled with smoke, and thus the gap in the wall and the stairwell, which VeoRide's employees were aware of, were not obvious to him.

[13] In this situation, we find instructive Section 342 of the Restatement (Second) of Torts, which is consistent with Indiana law regarding the duty owed to a licensee:[4]

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm

---

[4] Section 342 of the first Restatement of Torts was quoted approvingly by this Court in *Wozniczka v. McKean*, 144 Ind. App. 471, 486-87, 247 N.E.2d 215, 223 (1969).

to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.[5]

We further find comment h to that section particularly relevant:

A possessor of land who permits licensees to enter is subject to liability for bodily harm caused to them by the dangerous state in which he permits a natural or artificial condition to remain, if, but only if, he not only knows of the condition *but also should realize that it involves an unreasonable risk of causing physical harm to the particular licensee harmed thereby. In determining whether the possessor should realize that a known condition involves not only a risk but an unreasonable risk, the character of the invitation or permission is important. A condition, no matter how dangerous to those who come in contact with it, can involve risk to a particular licensee only if he may be expected to encounter it in the exercise of his license. Thus, if a possessor gives to another a license to come upon the land by day, he may have no reason to expect the licensee to enter by night. Therefore he may be under no duty to warn the licensee of a condition which would be obvious in daylight.* So too, a possessor has no reason to expect the licensee's presence at any point other than that within which the license gives him the privilege to enter. He is, therefore, under no duty to

---

[5] "The words 'the risk' denote not only the existence of a risk, but also its extent." Restatement (Second) of Torts § 342 cmt. a (Am. Law Inst. 1965). "Thus 'knowledge' of the risk involved in a particular condition implies not only that the condition is recognized as dangerous, but also that the chance of harm and the gravity of the threatened harm are appreciated." *Id*.

> warn licensees of conditions which exist outside of the area
> covered by the license.

*Id*. cmt. h (emphasis added).

[14]　Based on the foregoing, we conclude that whether VeoRide owed Dolsen a duty to warn him of the gap in the wall next to the stairwell depends upon underlying facts that require resolution by the trier of fact, including whether VeoRide should have realized that the condition involved an unreasonable risk of causing physical harm to Dolsen (who did not know or have reason to know of the condition and the risk involved), whether VeoRide should have expected that Dolsen would not discover or realize the danger, and whether VeoRide had reason to expect that Dolsen would encounter the condition in the exercise of his license. Assuming arguendo that such a duty existed, we further conclude that genuine issues of material fact exist regarding whether VeoRide's failure to warn Dolsen of the condition and the risk involved was a breach of that duty, that is, a failure to exercise reasonable care under the circumstances pursuant to Restatement Section 342(b); among the factors to be considered are whether VeoRide had a reasonable opportunity to alert fire department personnel. Additional issues of material fact exist regarding whether any breach of a duty to warn proximately caused Dolsen's injuries and the extent to which Dolsen might have contributed to his injuries for purposes of the Comparative Fault Act. Consequently, we reverse the trial court's entry of summary judgment in VeoRide's favor and remand for further proceedings.

Reversed and remanded.

Brown, J., and Felix, J., concur.